## Kennedy et al. *v.* Erdman et al., Appellants.

[Marked to be reported.]

*Trespass—Punitive damages—Statement—Averment of malice.*

To support a verdict for punitive damages in trespass, the plaintiff's statement need not aver wantonness, malice, or ill-will specifically, where it avers that the defendant tore down, demolished and carried away plaintiff's fence and trampled down and destroyed growing crops.

*Declarations of predecessor in title—Mitigation of damages.*

Where plaintiff's evidence, practically undisputed, showed that the trespass consisted of tearing down a fence which had existed for half a century, with open, peaceable and exclusive possession and cultivation of the land up to the fence, and that defendant was remonstrated with prior to taking down the fence and yet proceeded to do so with a strong hand, loose conversations, known to plaintiff before he got title, occurring some twenty years before between defendant and plaintiff's predecessor in title, to the effect that the fence was to be moved to a compromise line, being insufficient to establish the line and inadmissible for that purpose, are also inadmissible in mitigation of damages.

*Punitive damages —Declarations of defendant.*

Declarations of defendant, after being remonstrated with by plaintiff, that he was determined to tear down the fence between plaintiff and defendant, are admissible to show malice and ill-will, and that the trespass was wanton and aggravated, for the purpose of enhancing the damages.

*Process—New party—Defect cured by appearance.*

Irregularity of process in bringing in a new party, by service of certified copy of amendment of record, is cured by appearance and plea.

*Assignments of error—Reciting evidence—Practice.*

An assignment of error to the admission of evidence must recite the evidence; and this rule applies to a case where the offer of evidence recites the evidence proposed to be given.

Argued May 17, 1892.    Appeal, No. 120, Jan. T., 1892, by defendants, from judgment of C. P. York Co., Oct. T., 1889, No. 26, on verdict for plaintiffs.    Before Paxson, C. J., Sterrett, Williams, McCollum and Heydrick, JJ.

Trespass for tearing down line fence.

Plaintiff's statement contained three counts, the first and second for obstructing an alleged right of way.    The third was as follows: "And the plaintiff further states and avers that heretofore, to wit on the day and year aforesaid and on divers others days and times between that day and the day of

the commencement of .this suit, he the said defendant, with force and arms, etc., wrongfully and unlawfully broke and entered into the said messuage, tenement and tract of land of said plaintiff, and tore down, pulled up, demolished, removed and carried away a large number, to wit, about one thousand panels of post and rail fence, and about one thousand panels of worm fence of the said plaintiff there situate and with their feet and those of their horses, mules and cattle, trampled down and destroyed the grain, grass and corn of said plaintiff there growing, to the damage of said plaintiff, five hundred dollars, and therefore he brings suit." Defendants pleaded not guilty, and, after the amendment stated in the opinion of the Supreme Court, David Baughman pleaded not guilty.

Offers of evidence were made as follows, on the trial before LATIMER, P. J.:

Plaintiff's counsel proposes to prove by a witness that he heard Mr. Daniel Geiselman ask Erdman and Baughman, or Erdman in Baughman's hearing and presence, what they were doing there, and that Erdman said they were going to tear down this fence ; and Mr. Geiselman asked them by what authority, and Erdman answered by his own authority; that they were remonstrated with by both Kennedy and Geiselman, an adjoining land owner, and that Erdman said, in the presence of Baughman, that he was determined to do it. For the purpose of showing malice and ill-will on the part of the defendants ; that the trespass was wanton and aggravated; for the purpose of enhancing the damages.

Objected to, that it is not evidence for the purpose offered; that it is not evidence under the plaintiff's statement, there being no allegation of wantonness, malice or ill-will, which are substantive grounds for damages; what Geiselman, the witness, said to Erdman is not evidence for any purpose ; that it is an attempt to introduce new parties and a new claim of right to this alley by other adjoining land owners.

The Court: I have some doubt about the admissibility of the offer, but I will admit it.   Exception. [2]

The witness on the stand, Daniel Kennedy, testified yesterday that Karl Erdman and David Baughman, the defendants, threw rails over on his corn.   We have examined him with reference to whether or not the cows had been in his corn prior

to the removal of this fence.  We now propose to ask him, on this cross-examination, whether or not, prior to removal of this fence in 1889, Edward Parr's heifer was not in his corn on a Sunday, and whether or not he, the plaintiff, and one William Grove, did not, together with other people, put her out.  For the purpose of contradicting the plaintiff, if he denies it, laying the ground of contradiction, and in mitigation of damages.

Objected to as irrelevant and not proper cross-examination; not legal evidence for the purpose offered; and not evidence for the purpose of contradicting.  Offer rejected and exception. [3]

The defendant proposes to prove by Franklin Zinn, the witness on the stand, and others, that about 1870 he was living on the property of the plaintiff, which was then owned by his father, George Zinn.  That his father, George Zinn, procured Jesse D. Keller, a surveyor of the neighborhood, to come there and make a survey of the property now claimed by the plaintiff.  That the witness was one of the chain carriers at that survey.  That they started to survey at the line between Parr and Geo. Zinn, and ran down to the pike south to the lane in controversy.  That they ran this line twice and drove a stake, which was about 18 inches or 2 feet inside of the fence on the property now claimed by Kennedy.  That his father, Geo. Zinn, said to Mr. Keller, the surveyor, is this a straight line?—(referring to the line along the lane) and Mr. Keller, after examination, said it was.  That his father then looked out along the line and shook his head, and with an oath said, "It is an awful crooked one," or words to that effect.  That Karl Erdman, the defendant, was present.  Erdman then said to George Zinn, "This fence (referring to the fence along the property now claimed by Kennedy) is not on the line."  That his father turned around and said to Erdman, "Well, shall I set her in?" Mr. Erdman said no, not now but when we make a new fence, then put it back on the line, or words to that effect.  To be followed by evidence that the plaintiff, Daniel Kennedy, had full notice of this prior to his purchase of his property.  And to be followed further that removal of the fence by the defendant was in pursuance of this arrangement.  For the purpose of sustaining the defendant's plea of not guilty, and showing a right to removal of fence in controversy.

Objected to as irrelevant, not legal evidence for the purpose. Offer overruled, exception. [4]

The defendant now proposes to prove the facts stated in the last preceding offer, that in connection therewith Jesse D. Keller, the surveyor, mentioned in the last offer, did run a line along this lane back as far as the rear of the property claimed by the plaintiff, and that line fell north of all the fence torn down by the defendant. That, when the surveyor and the chain carriers reached the rear end of the property now claimed by the plaintiff, he sent John M. Zinn, who was one of the chain carriers, to the eastern end of the line at the pike, and had directed him to set stakes over there to the western end of the property claimed by the plaintiff, where the surveyor then was. That Geo. Zinn looked through the instrument and sighted the poles, and that the fence torn down by the plaintiff fell south of that line. That at that point at the western end of the property now claimed by the plaintiff, Geo. Zinn again said to surveyor Keller, "Does it call for a straight line?" That the parties, the surveyor, Keller, Geo. Zinn and John M. Zinn, the chain carrier, went back to the corner of Geiselman's woods. That Mr. Keller said, "We will get a straight line pretty soon." That Mr. Keller took his compass and sighted through. That John M. Zinn then went up and sighted through the instrument and he saw the two stakes in line with the instrument. George Zinn, the predecessor in title of the plaintiff, then looked through the instrument. That he scratched his head and said, "Stop a minute, is that a straight line?" Keller said, "Look again." Then he looked the second time and said, "Is my fence so crooked?" Then he said to Erdman, "Do you want me to tear up my fence and set it on the line?" Erdman said, "No, we are good friends, let us remain good friends; leave it until the fence gets worse and then we will make it right." That the fence at the rear was about 2 feet on Erdman's land, and that in front at the pike it was about 2 feet on Erdman's land. To be followed by evidence that the defendant tore down no more fence than what fell south of this line, (line run by Keller that day,) and from which Geo. Zinn and John M. Zinn sighted the poles. To be followed by evidence that Kennedy, the plaintiff, knew these facts before his purchase. For the purpose of sustaining the defendant's plea of not guilty,

and showing that there was a compromise line and the location of it agreed upon by Karl Erdman and Geo. Zinn, the then adjoining owners, and in mitigation of damages.    Offer overruled and exception. [5]

The defendant now proposes to prove the facts stated in the last two preceding offers, and in addition that a short time subsequent to this survey made by Keller, Karl Erdman, the defendant, and Jefferson Bollinger, were driving down the Baltimore pike, past Mount Olivet cemetery, where Geo. Zinn was then living.    That Zinn came out on the pike and hailed them and stopped them, and that there was a conversation between Erdman and Zinn, which was begun by Zinn, in reference to the line and fence in controversy.    Zinn in that conversation asked Erdman if he wanted him to tear the fence down right away and make a new one, or words to that effect, and Mr. Erdman said, "No," he could wait until the fence got worse and then they would put up a new fence.    That Mr. Zinn would make half of the fence and Mr. Erdman the other half.    That there was a chestnut tree that stood on Erdman's land near to this fence, and that Zinn asked Erdman if he would allow him to have this tree for the purpose of temporarily repairing the fence, and that Erdman told him he could have it for that purpose.    That in this conversation they also spoke about a lane, and that they agreed that when they made the fence they would also close up the lane.

To be followed by evidence that the lane and the fence which George Zinn and Karl Erdman were talking about, was the lane and fence in controversy.    For the purpose of showing that there was at that time a controversy about the lane and fence in question between the defendant and Geo. Zinn, the plaintiff's predecessor in title.    That a new and compromised line was agreed upon between Geo. Zinn and the defendant, which line fell north of the fence torn down by the defendant.    For the purpose of showing a breach of the continuity of the plaintiff's alleged prescriptive right to use the lane in controversy, and for the purpose of sustaining the defendant's plea of not guilty, and that the fence was allowed to remain as it stood, and the lane to be used thereafter under license of Karl Erdman, and for all the purposes mentioned in the two preceding offers, and that the plaintiff, Daniel Kennedy, had notice of all these facts prior to his purchase.

The Court: I think the offer must be overruled for the reasons stated in overruling the former offers. For the further reason that this offer involves an attempt to prove a parol surrender of alleged right of way, and for those reasons I overrule the offer. Exception. [6]

The evidence showed that the way was obstructed by Erdman and Jacob Baughman, and that the fence was torn down by Erdman and David Baughman. The court for this reason directed a verdict for defendants on the first and second counts and for plaintiff on the third count.

Defendant's points were as follows, *inter alia:*

"1. Under the statement of the plaintiff filed in this case, and the evidence admitted thereunder, the jury cannot find a general verdict for the plaintiff against the defendant. *Answer:* For the reasons I have already given, your verdict in the case will be for the defendants on the first two counts of the statement, and for the plaintiff on the third count of the statement, in such sum of money as you shall assess as damages, under the general instructions we have given you. [7]

" 2. There being no evidence in the case to justify the jury in finding punitive damages against David Baughman, one of the defendants, therefore there cannot be a verdict for any vindictive or punitive damages against the defendants. *Answer:* If the jury shall find the fact to be stated in this point, that David Baughman is not the proper subject for punitive or vindictive damages, then the point is correct, because then you cannot assess punitive damages against the other." [8

Verdict for $504, reduced by the court to $500, and judgment thereon, whereupon defendant appealed.

*Errors assigned* were (1) order of court directing service of certified copy of record, as set out in opinion of Supreme Court, quoting the order; (2) admission of evidence, quoting the bill of exception, but not the evidence; (3–6) rejection of evidence, quoting the bills of exception ; (7, 8) answers to points, quoting the points and answers.

*V. K. Keesey, Stewart, Niles & Neff* with him, for appellants.—A new party should be brought in by alias summons: Fidler v. Hershey, 90 Pa. 363.

Trespass and trespass on the case were improperly joined. Erdman and Jacob Baughman were properly defendants in one case; Erdman and David Baughman, in the other. Legal rights are expressly saved by the Act of May 25, 1887, § 8, P. L. 272. They are not triable together: Specht v. R. R., 7 C. C. 54. The action of the court, of its own motion, directing a verdict for defendant on the first two counts and for the plaintiff on the third, prejudiced defendants both as to damages and to costs.

The evidence of malice, etc., should have been excluded as there was no such allegation in the third count of the statement, which, under the Act of 1887, should contain a concise statement of the substantive grounds of recovery. The evidence showed David Baughman was an employee of Erdman. There was no evidence of malice on his part. Hence the second point should have been affirmed. The question whether or not there is evidence is for the court.

If the evidence covered by assignments of error 4–6 had been admitted it would have shown that Erdman was removing the fence in accordance with an agreement made with plaintiff's predecessor in title. The charge of wantonness would have been fully met. Erdman had a right to insist on the compromise line.

Third assignment of error. Defendant's offer was to show that the corn was injured by a neighbor's heifer, in mitigation of damages.

*H. L. Fisher*, *G. G. Fisher* with him, for appellee —The court could not require an election on which count to p oceed: Burkholder v. Beetem, 65 Pa. 496, 507; Martin v. Stille, 3 Wh. 337.

The Act of 1887, § 2, requires trespass and trespass on the case to be brought in one form of action. And see 1 Brewster's Pr. 314.

Appearance and plea operated as a waiver of any irregularity of process. Nor can Erdman object, as he was not harmed: Leonard v. Parker, 72 Pa. 236, 238–9.

No evidence was offered as to damages under the first two counts for obstructing plaintiff's way and that part of the claim

was virtually abandoned. The case did not go to the jury at all on that point.

As to the absence of an averment of malice, the Act of 1887 is highly remedial and is liberally construed : Jones v. Gordon, 124 Pa. 263, 271.

The evidence showed defiant declarations by Erdman in Baughman's presence while engaged in these very acts, tearing down the fence, throwing the rails upon the growing corn, etc.

Courts will not interfere except in overwhelming cases of excessive damages : Kenderline v. Phelin, 9 Leg. Int. 54 ; Sommer v. Wilt, 4 S. & R. 27, 28 ; McBride v. McLaughlin, 5 Watts, 376–7. Where there is evidence, the jury and not the court determine if exemplary damages be given : Nagle v. Mullison, 34 Pa. 48, 54 ; R.. R. v. Eby, 107 Pa. 166 ; Reynolds v. Braithwaite, 131 Pa. 416, 422 ; Pitts. R. R. v. Lyon, 123 Pa. 140, 150 ; Blair I. & C. Co. v. Lloyd, 3 W. N. 103 ; Cobb v. Bennett, 75 Pa. 330.

A right of way by presumed grant, cannot be renounced by parol, being within the statute of frauds : 1 Gr. Ev. §§ 263, 270 ; Dyer v. Sanford, 9 Metc. 395, 410–14. Nor without consideration : Erb. v. Brown, 69 Pa. 219 ; Kidder v. Kidder, 33 Pa. 268 ; Collam v. Hocker, 1 Rawle, 111. The alleged agreement was too indefinite : Hagey v. Detweiler, 35 Pa. 409. Such changes of landmarks are not encouraged : Chew v. Morton, 10 Watts, 324. An actually executed compromise or consentable line, with notice, might have been admissible, but the offers here were unexecuted, incongruous parol compromises to be made at an indefinite time. If inadmissible for either purpose, they were not admissible in mitigation of damages : Heath v. Slocum, 115 Pa. 558.

There was no offer to prove that the heifer broke down any corn, therefore it was not evidence in mitigation.

OPINION BY MR. CHIEF JUSTICE PAXSON, July 13, 1892.

Litigation about line fences is one of the most expensive luxuries known to the law. This case is not an exception to the rule. The fence in controversy divided the property of the plaintiff from that of defendant, Karl Erdman. It appears to have been an old fence, and to have been standing on the same line for a long period of time, perhaps fifty years. For

some reason the defendant, Erdman, became dissatisfied with its location, alleging, as we understand it, that in some places it encroached upon him as much as two feet. Assuming to decide the law and the facts in his case in his own favor, he took down the fence, and placed the rails and posts on the land of the plaintiff. The jury took a different view of the matter, and returned a verdict against the defendants of $504 damages, with costs of suit. When to the damages are added the costs, counsel fees, and the expense of printing a paper-book of one hundred and sixty-four pages, we may safely say that controversies of this kind are a luxury.

The jury evidently took a liberal view of the damages, as their verdict is $4 in excess of the plaintiff's claim, as set forth in their statement of their cause of action. This excess of $4 was remitted by the plaintiffs below upon an intimation from the court that if it was not done, a new trial would be granted. Had the learned judge gone further, and reduced the verdict by at least one half, it would have done no violence to the justice of the case. The verdict is not only compensatory, but highly punitive. In view of this fact, we would gladly help the defendants if we could do so in accordance with the recogonized rules of law. A careful examination of the voluminous record, however, fails to disclose any error which would justify us in reversing the judgment.

The first specification alleges that the court erred in making the order of November 15, 1890, directing a certified copy of the record to be served on David Baughman, to which Karl Erdman, defendant, excepted. This order grew out of an amendment of the record changing the name of a party defendant. The suit as originally brought was against Karl Erdman and Jacob Baughman. At some stage of the proceedings the plaintiff discovered that Jacob Baughman was not the defendant he wanted, but that David Baughman was the person who assisted in taking down the fence. He accordingly obtained permission to amend the record by substituting the name of David for that of Jacob. It was not a mistake in the name, but a mistake in the man. The next difficulty that presented itself was that David Baughman had not been served with process and was not in court. The plaintiff therefore obtained the order complained of, and had it served with a

certified copy of the record upon David. The defendant, Erdman, excepted to this order. David Baughman did not except because he was not in court and could not except. Why Erdman excepted does not appear. It could do him no harm to have a co-defendant added in a case of trespass to assist him in paying the damages. However irregular this proceeding, it was cured by David's coming into court, and taking part in the trial as a party defendant. We do not regard this matter as important, and it is referred to only that it may not be supposed we have overlooked it.

It is difficult to see any substantial objection to the evidence referred to in the second specification. The object of it was to show malice and ill-will on the part of the defendants, and that the trespass was wanton and aggravated, for the purpose of enhancing the damages. Aside from this, the specification is not assigned in accordance with the rules of court.

We are unable to see the relevancy of defendant's offer of evidence, as contained in the third specification. The defendants proposed to ask the plaintiff upon cross-examination " whether or not prior to the removal of this fence in 1889, Edward Parr's heifer was not in his corn on a Sunday and whether or not he, the plaintiff, and one William Grove did not go with other people and put her out, for the purpose of contradicting, and in mitigation of damages." We do not understand how the fact that Parr's heifer was in the plaintiff's corn on a Sunday could operate in mitigation of damages; and as it had no possible relevancy to the issue, the plaintiff could not have been contradicted, if he had denied it.

The fourth, fifth and sixth specifications may be considered together, as they all relate to the same subject. They refer to an offer of evidence, varied somewhat in each specification, to show that about 1870 a compromise line had been run by a surveyor. The offers are too voluminous to be repeated. If admitted, they would have been insufficient to establish the line, and would not be evidence for that purpose. Nor do we think they were competent in mitigation of the damages. The most that the proposed evidence amounted to was loose conversations between defendant, Erdman, and plaintiff's predecessor in the title. They amounted to little, and were never acted upon. In view of the fact of plaintiff's evidence, which,

upon this point, we do not understand to have been seriously contradicted, that a fence had existed, been kept up and maintained where this one stood for about half a century, that plaintiff and those under whom he claimed, had been in the open, peaceable and exclusive possession of the land, and had cultivated it up to that fence, with the uninterrupted use of the lane or alley in connection with his place during all that time; and in view of the further fact that the defendants were remonstrated with, prior to taking down the fence, and yet proceeded to do so with a strong hand, we do not think this loose conversation, which occurred twenty years ago, entitled to any weight upon the question of damages.

We find no error in the refusal of the defendant's first point. The learned judge instructed the jury that upon the first two counts the verdict should be for the defendant, but left them to find a verdict for the plaintiff on the third count. The third count referred to was for demolishing the fence. We do not know of any reason why a verdict for the plaintiff could not have been rendered upon this count: Erie City Iron Works v. Barber, 118 Pa. 19; Chapin v. Cambria Iron Works, 145 Id. 493.

By the defendant's second point the court was asked to instruct the jury that there could not be a verdict for vindictive or punitive damages. This point was properly refused. To have affirmed it under the evidence would have been error.

Judgment affirmed.