## Huling *v.* Henderson, Appellant.

*Damages—Vindictive damages—Wanton injury—Evidence.*

Exemplary or vindictive damages may be given for wanton and intentional violation of rights, or circumstances of aggravation.

In an action to recover damages for wantonly destroying shade trees in front of plaintiff's house, the evidence tended to show that defendant, who lived in the adjoining house, in plaintiff's absence trimmed the trees on the sidewalk very severely, and at an improper season, and that, of all those trimmed, only those died that were in the way of defendant's view. A witness also testified that defendant asked him to so trim the trees as to kill them. *Held,* that the evidence was sufficient to justify the court in charging that, if defendant willfully and intentionally killed the trees, the jury might give the fullest damages warranted by the evidence, "the highest compensatory damages measured by the severest rule."

In the above case the fact that a land company instructed defendant to trim the trees would not relieve him from exemplary damages, if he did the work in a wanton and malicious manner.

*Streets—Property in trees on sidewalk.*

Plaintiff bought his land by metes and bounds referable to a town plot calling for a street. There was no evidence that the town authorities accepted the street as a public highway. *Held,* that plaintiff had sufficient

property right in the trees on the sidewalk to sustain an action against a stranger for the wanton destruction of the trees.

*Evidence—Objection—Immaterial error—Damage to trees.*

In an action to recover damages for the destruction of shade trees, plaintiff's wife testified as to the damage: "I claim that it will be three hundred dollars, that much damage to our property on account of the shade, if nothing else. They shaded the yard nicely." Upon a general objection to the testimony the trial judge suggested that the witness could be cross-examined as to her means of knowledge. This was done, and no motion was afterwards made to strike out her testimony. Plaintiff was also allowed, without objection, to estimate the damage at the same sum. *Held,* that a judgment on a verdict for one hundred and fifty dollars would not be reversed because of the admission of the wife's testimony.

Argued Feb. 6, 1894. Appeal, No. 129, July T., 1893, by defendant, William Henderson, from judgment of C. P. Delaware Co., Dec. T., 1891, No. 125, on verdict for plaintiff, Charles C. Huling. Before STERRETT, C. J., WILLIAMS, MITCHELL, DEAN and FELL, JJ. Affirmed.

Trespass for destruction of two shade trees.

The case was originally brought before a justice of the peace. Upon appeal to the court of common pleas, plaintiff filed a statement claiming three hundred dollars damages.

At the trial, before CLAYTON, P. J., it appeared that, on March 1, 1872, Price I. Patton bought a tract of land at Fernwood, in Delaware county. He cut and laid streets through it, divided it into building lots, planted trees in front of the different lots along the curb line, and made a plan of the ground showing the lots and streets, and had it recorded in the office for recording deeds in Delaware county. Plaintiff purchased one of the lots, in front of which on the curb line were two large trees. Defendant owned and lived on a lot adjoining plaintiff's property, and had charge of the work for a neighboring cemetery company. The two trees of plaintiff and one of defendant obstructed the view from his work to his house. The evidence tended to show that while the trees were in full foliage, defendant, without the permission or knowledge of plaintiff, and while he was away from home, trimmed these trees and one of his own, which obstructed his view, so closely that they soon afterward died. A. witness for defendant, John Brown, testified that defendant asked him to so trim the trees as to kill them.

Defendant claimed that the Fernwood Land Association had title to the streets, and that he had been authorized by W. J. Kelly, the representative of the land company, to trim the trees.

Plaintiff's wife was asked: " Q. What loss are those trees to your property?" Objected to. By the Court: I suppose she is competent to show what damage the property has suffered; you can examine her as to her means of knowledge. [7]

The witness testified: " I should suppose about $300." Cross-examination: "I claim it will be that much damage to our property on account of the shade if nothing else. They shaded the yard nicely."

The witness was cross-examined as to her sources of information, but no motion was made to strike out her testimony.

The court charged in part as follows:

" Defendant asked permission from the man he supposed had authority, and, not being objected to by the owner, we may take it for granted that he thought he had the right to trim the trees. Now the great question after all is did he kill the trees by his careless and unskillful trimming? That is the great question in the case. If he· did, he must pay for them. If he did not, then I say you may excuse the trespass of cutting the trees without the owner's consent; if it was done innocently and with good faith, you may excuse him. But only because the owner did not protest. If the owner had protested, I am inclined to think the plaintiff would be entitled to recover for cutting his trees, whether he did good or harm — a man must be his own judge how he shall trim his own trees—but not having protested and it seeming to have been the general opinion of the community that this land company had some authority over these trees and over this street.

" The main question in the case is, did he undertake to do what he had not skill enough to perform? If he did, he is liable for the consequences. That will be the first question. The next question is, did he wantonly trim those trees? Was his object to kill them? If it was, it will make a very great difference in the damages. In the first instance they must be compensatory. In the second instance they may be measured by the highest rule, wherever there is wanton trespass and wanton and malicious injury. By the words wanton and malicious, I mean intentional. Did he intend to trim these trees in such a man-

ner that by the act the trees should die ? If he did, then he
should be made to pay the highest damages, not the lowest,—the
highest compensatory damages measured by the severest rule.
If you find that his intention was proper, that he acted under
supposed authority, and, the plaintiff not having protested, he
was led to believe he had a right to trim the trees and did it
according to his best judgment, with no intention to injure
these or their owner, then the damages should be measured by
another rule ; that is to say, how much will it cost to repair
the damage and what will pay for the time the plaintiff has
been deprived of the shade of his trees.

" Now gentlemen you understand the two points in the case.
You need not worry yourselves about the property or whether
the plaintiff owns to the middle of the street or whether he
owns up to the line of the street. I charge you under all
the evidence he had property enough in these trees to entitle
him to damage for their wanton or careless destruction. That
covers the whole question. . . .

" If you should come to the conclusion that the trees were
destroyed by the defendant's unskillful trimming without the
intention to kill them or to injure them, then the damages will
merely be compensatory—reasonable—what will make the plain-
tiff reasonably whole ; [some of the witnesses say $5.00 or $6.00
a tree to replace them. Others say $50.00 a tree, and it would be
years before the shade would be as good as before.] [6] . . . .
[If you come to the conclusion that there was an intention to
injure these trees, and that it was done without due regard to
care or to the consequences that might follow, and that the in-
tention of the defendant was to destroy these trees, then you
should give the plaintiff the fullest damages, the fullest damages
the testimony would warrant you in giving, because that was a
willful wrong. The other would be a mere accidental wrong,
and there is a great difference when you come to the measure
of damages between a willful and accidental wrong.] " [1]

Defendant's points were, among others, as follows :

" 2. The property lines of the plaintiff only calling for the
side of Williams street and the grant only giving to him the
use of the said Williams street as a free passageway and water-
course, the original grantors could exercise control over it until
accepted by the public authorities as a public highway, and if

the defendant obtained their permission to trim the trees, he would not be responsible to the plaintiff in damages. *Answer:* That is affirmed, gentlemen, unless you find the work was negligently and carelessly done, or unless you should find wanton injury. If you find either of these it is negatived." [2]

"3. If the jury find that Williams street has never been accepted by the public authorities as a public highway, that it is a street laid out upon a town plot and that the original owners of the property have continued to exercise a supervision and control over the streets, and that Mr. Kelly, the superintendent, gave to Henderson permission to trim the trees, the plaintiff is not entitled to recover. *Answer:* I cannot affirm that point because the question is not so much one of authority as one of negligence. It could be affirmed, as I stated in my answer to the other points, if the work was done in a careful, skillful manner without intention to do wrong, then the point would be affirmed; but if the work were unskillfully done and the trees injured because of carelessness or want of skill by the party who voluntarily undertook to do it, then the plaintiff can recover. I stated to you, in the judgment of the court, the plaintiff here has enough property in the trees to entitle him to damages if they were wantonly injured or unskillfully destroyed without his consent." [3]

"4. If the jury find that by common consent in the neighborhood the original owners of the property have been looked to and called upon to keep the streets in condition, and the defendant, acting upon this, procured from the superintendent permission to trim the trees, the plaintiff is not entitled to recover. *Answer:* I must give to that the same answer I did to the other, I must qualify it if you find the trees were not skillfully trimmed, that they were injured because of the careless or unskillful trimming by the defendant, then he can recover, although he supposed he had a right to trim them." [4]

"7. If the jury find that the defendant unlawfully trimmed the trees, and that in consequence of such trimming they died, the measure of damages would be the cost of replacing them. *Answer:* That is affirmed, unless you find there was an intention at the time to destroy the trees." [5]

Verdict for $150. Plaintiff remitted $50.00, and judgment was entered for $100.

*Errors assigned* were (1–6) instructions ; (7) ruling on evidence, quoting bill of exceptions, evidence and instructions.

*V. Gilpin Robinson*, for appellant.—It is error to permit the jury to award exemplary damages except where there are circumstances of outrage, oppression, malice or wanton disregard of another's rights : Forsyth v. Wells, 41 Pa. 294 ; Ry. v. Taylor, 104 Pa. 317 ; Forsyth v. Palmer, 14 Pa. 96 ; Rose v. Story, 1 Pa. 196 ; Ames v. Longstreth, 10 Pa. 148 ; Heil v. Glanding, 42 Pa. 493 ; Nagle v. Mullison, 34 Pa. 54 ; Good v. Mylin, 8 Pa. 51 ; Forsyth v. Wells, 41 Pa. 294.

The testimony in the case showed an ownership to the side of the street, and the trees, instead of being on the property, as set forth in the statement of claim, were in the street and outside of plaintiff's property lines as set forth in his statement. The allegata and probata should agree : Greenl. Ev. § 50.

The court misstated the evidence as to damages. It was held in R. R. v. Alvord, 128 Pa. 47, that such misstatement by the court is error and ground for reversal : Greber v. Kleckner, 2 Pa. 289 ; Musselman v. R. R., 2 W. N. 105.

The wife is not shown to have had any knowledge of the market value of the property, nor of the cost of replacing the trees. The special injury to defendant was that it gave the jury limit up to $300, and accounts for a verdict three times in excess of what we submit would be fair compensation for the injury, even if the jury have found that the trees were killed from defendant's want of skill.

*W. Roger Fronefield*, for appellee.—In an action of trespass, vindictive damages may be given, if the case shows a wanton evasion of the plaintiff's rights or any circumstances of aggravation or outrage : Amer v. Longstreth, 10 Pa. 145 ; McCarthy v. De Armit, 99 Pa. 70 ; Seely v. Alden, 61 Pa. 305 ; R. R. v. Rosezweig, 113 Pa. 519 ; Blair Iron & Coal Co. v. Lloyd, 3 W. N. 103 ; Phillips v. Lawrence, 6 W. & S. 154 ; R. R. v. Lyon, 123 Pa. 140.

Defendant either had a wrongful purpose in view or trimmed the trees in such a manner that he knew they must die. Forsyth v. Wells, 41 Pa. 294, cited by appellant, does not apply.

On the sale of a lot bounded by a street, if the grantor had

title to the ground covered thereby, it passes to the grantee unless expressly reserved: Trutt v. Spotts, 87 Pa. 339; Spackman v. Steidel, 88 Pa. 453; Transue v. Sell, 105 Pa. 605; Dobson v. Hohenadel, 148 Pa. 367; Firmstone v. Spaeter, 150 Pa. 616; Paul v. Carver, 26 Pa. 224; Cox v. Freedley, 33 Pa. 124; Paul v. Carver, 24 Pa. 207; Ott v. Kreiter, 110 Pa. 375; Ferguson's Ap., 117 Pa. 451.

An action lies for timber cut by a stranger on plaintiff's land, though within the line of a public road laid out and approved by the court: Sanderson v. Haverstick, 8 Pa. 294; Paul v. Carver, 26 Pa. 224.

Where the entire tone and scope of the charge taken as a whole has no tendency to mislead, the judgment will not be reversed even though particular expressions may be apparently unfair or even admittedly erroneous: Kiser v. Vanleer, 2 W. N. 561; Buyers v. Patterson, 2 W. N. 649; Kerns v. Freight Co., 2 W. N. 718.

The measure of damages is, to what extent has the defendant made the condition of the property worse by killing the trees, or what would it cost to put the property in its original condition: Lentz v. Carnegie Bros., 145 Pa. 612; Seely v. Alden, 61 Pa. 305.

The wife knew better than any one else the amount of damages which should be allowed for the diminished enjoyment of the property, and she stated the reason. Plaintiff, without objection, testified to the same amount of damages.

OPINION BY MR. JUSTICE MITCHELL, May 21, 1894:

The learned judge put before the jury very clearly three views of the case for their consideration. First, that if the defendant trimmed the trees with the permission of the person who he thought had authority, and the plaintiff saw him doing it and made no objection, the jury might find in defendant's favor, unless he killed the trees by carelessness and want of skill. Defendant certainly has no right to complain of this, it was more favorable to him than he was entitled to ask. If Kelly had in fact no authority, permission from him did not excuse the trespass, no matter what defendant thought. Secondly, if the defendant by careless and unskillful trimming killed the trees, he was responsible for such sum as would

make compensation ; and, thirdly, if however he willfully and intentionally killed them, then the jury might give the fullest damages warranted by the evidence, " the highest compensatory damages, measured by the severest rule."

The law as thus laid down is not only correct but substantially unchallenged. The general rule is compensation, but exemplary or vindictive damages may be given for wanton and intentional violation of rights, or circumstances of aggravation or outrage : McCarthy v. De Armit, 99 Pa. 63 ; R. R. Co. v. Rosenzweig, 113 Pa. 519, 544 ; R. R. Co. v. Lyon, 123 Pa. 140. The assignments of error do not really question the correctness of the charge as matter of law, but only its applicability to the evidence in the case. But of this there cannot be any doubt. Even on the defendant's theory that he was authorized by Kelly as representative of the Fernwood Land Association he was nevertheless liable for any injury resulting from his negligent performance of a self-imposed task. One who undertakes any work impliedly assumes that he will do it with ordinary skill and care, and becomes liable to make compensation for not doing so.

The third view put by the learned judge to the jury, is however the pinch of the case. Appellant's counsel has argued with great earnestness that the evidence did not warrant the submission to the jury of the question of exemplary damages. A detailed review would not be profitable. The evidence tended to show that the trees were trimmed very severely, and at an improper season, and that of all those trimmed, only those died that were in the way of defendant's view, and which he may therefore have had a motive in killing. It may be conceded that these facts, although perhaps suspicious, would not of themselves make out a case of wanton or willful destruction, but when they were followed by the testimony of Brown that defendant asked him to so trim the trees as to kill them, all the preceding evidence became susceptible of a different construction, and we cannot say that the jury might not properly view defendant's acts as willful and their consequence as intended. Certainly the learned judge was justified in submitting that matter to them. If any injustice has been done to defendant it was by the jury, not by the court, and is not for us to correct.

The learned judge also instructed the jury that the extent of

plaintiff's title was immaterial, as it was sufficient to maintain the action. We find nothing on the record to show that this was error. Plaintiff bought his land by metes and bounds referable to a town plot calling for a street. Prima facie his title extended to the middle of the street, and there is nothing in the very meager evidence before us to show that as against his grantors he did not have such an interest in the soil on which the trees stood as would sustain his action, even though the borough authorities never accepted the streets on the town plot as public highways.

We do not find any misstatement of the evidence in the sixth assignment. The learned judge stated the extremes of the cost of replacing the trees as testified to by the witnesses, the highest and the lowest. Whether the witness who gave the highest estimate was to be relied on or not was for the jury.

The objection to the receipt of the testimony of plaintiff's wife as to the extent of the damage was very general, and when the learned judge suggested that she could be cross-examined as to her means of knowledge, the suggestion appears to have been accepted, and no motion was afterwards made to strike out her testimony. As the plaintiff himself had been allowed to estimate the damage at the same sum, the error even if clearer than it is, would not be sufficient to justify a reversal, in a case where the verdict shows that the jury were not governed by it.

Judgment affirmed.