## Rossi et al. v. Gehris Motors, Inc.

*Holl, Taylor & Holl*, for plaintiffs.
*Rocap & Rocap*, for defendant.

BRETHERICK, J., April 23, 1952.—Counsel for defendant aptly states the question presented in this case:

"Where plaintiffs bring an action in assumpsit for materials furnished and labor performed in and about the improvement of defendant's property pursuant to an oral contract, may defendant file a counterclaim for liquidated damages resulting from the poor, improper, unworkmanlike and negligent performance by plaintiffs of a prior oral contract for the improvement of the same property?"

The question arises by way of preliminary objections to the counterclaim. Since, in our opinion, the

question requires an affirmative answer, the preliminary objections will be dismissed.

It appears from the complaint that defendant entered into an oral contract with plaintiffs whereby plaintiffs agreed to perform the work and to furnish the materials and equipment in and about the alteration and improvement of defendant's business premises situate at No. 6500 Market Street, Upper Darby. The complaint sets forth the work performed and the materials and equipment furnished by plaintiffs, pursuant to the terms of the oral contract, and in performance thereof, together with dates, quantities and charges therefor. It is further averred that the materials were of good and standard quality, and the work was performed in a good and workmanlike manner; that the prices charged were the fair, reasonable and current market price for the work, materials and equipment, and were what defendant agreed to pay; that defendant has refused and still refuses to pay therefor.

Defendant's answer admits that defendant orally contracted with plaintiffs for the performance of work and the furnishing of materials and equipment by plaintiffs in the alteration and improvement of defendant's business premises known as No. 6505 Market Street (not No. 6500 Market Street, as plaintiffs allege), "which work consisted of the excavation of an areaway on the westerly side of the building between the ramp and the wall of the building, the erection of a bridge across the said areaway on the westerly side of the building from the ramp to the roof, the surfacing with black top of the ramp and the surfacing with black top a portion of the ground around the foundation of the building on the westerly side and the southerly side."

Other allegations of defendant's answer set forth

matters in defense of plaintiffs' claim which it is unnecessary to detail for present purposes.

The counterclaim sets forth that in the fall of 1950, shortly prior to the public opening of defendant's building, known as No. 6505 Market Street, plaintiffs and defendant entered into an oral contract whereby plaintiffs agreed to furnish the necessary materials and to perform the necessary labor in and about the laying of a black top surface on the roof of the building so that it could be utilized as an additional park area for automobiles, in consideration for which defendant agreed to pay plaintiffs, "upon satisfactory completion of said work," the sum of $1.25 per square yard of surfacing; that thereafter, plaintiffs performed the labor and furnished the materials under said oral contract, and, on January 4, 1951, defendant paid to plaintiffs the sum of $2,232.50 for the work; that prior to plaintiffs' performance of the work, defendant had installed by a competent roofing contractor a roof on the building of approved materials, which roof had proved to be completely watertight; that before permitting plaintiffs to enter upon the work, defendant had the roofing contractor outline to plaintiffs in detail the manner in which the surfacing should be laid so as not to damage the roof, particularly pointing out the care to be exercised around the edge of the roof where flashing had been installed.

Paragraph 20 of the counterclaim avers that:

"Plaintiffs, recklessly, carelessly and negligently disregarding the instructions and warnings of the said roofing contractor, layed the black top surfacing in such a poor, improper, unworkmanlike and negligent manner that the flashing was damaged and broken at the edges of the roof."

Further averments of the counterclaim are to the effect that because the damage done by plaintiffs was hidden from defendant's view by the black top surfac-

ing at the time defendant made payment to plaintiffs, defendant failed to discover the damage until leaks in the roof appeared at the edges where the flashing turned up over the coping wall; that immediately upon discovery of the leaks, an inspection was made by removing portions of the black top and it was then discovered that the roof had been damaged by plaintiffs; that plaintiffs were immediately notified of the damage and requested to forthwith repair the same; that plaintiffs sent one worker to the site who was so inexperienced and unqualified that further damage was done to the roof and additional leaks appeared; that defendant employed a roofing contractor who furnished the necessary materials and performed the necessary labor in and about effecting the repairs to the roof; that the cost of the repairs to the roof was $1,019, which was the fair and reasonable market value of the labor performed and materials furnished.

In support of their preliminary objections to the counterclaim, plaintiffs urge that, in an action in assumpsit, defendant has filed a counterclaim resting in tort, and "which did not arise from the same transaction as the plaintiffs' cause of action in assumpsit." We think plaintiffs' contention is without merit.

Rule 1031(a) of the Rules of Civil Procedure provides:

"The defendant may set forth in the answer under the heading 'Counterclaim' any cause of action or set-off which he has against the plaintiff at the time of filing the answer (1) which arises from the same transaction or occurrence or series of transactions or occurrences from which the plaintiff's cause of action arose, or (2) which arises from contract or is quasi-contractual."

In the comment on the rule in Goodrich-Amram Civil Practice, it is said (p. 143):

"If the defendant's 'cause of action' or 'setoff' is contractual or quasi-contractual in nature, there are no restrictions on the right of counterclaim. This includes situations in which the defendant may waive a tort and sue in assumpsit."

We leave out of view the question whether the counterclaim sufficiently avers a breach of an express contract whereby plaintiffs undertook "satisfactory completion of said work" (Par. 16, counterclaim.). Clearly, plaintiffs impliedly contracted to exert ordinary and reasonable skill and care in the performance of the work, and to complete the job in a "workmanlike" manner.

"One who undertakes any work impliedly assumes that he will do it with ordinary skill and care, and becomes liable to make compensation for not doing so": Huling v. Henderson, 161 Pa. 553, 560.

If the averments of paragraph 20 of the counterclaim are to be accepted as true, and they must be for present purposes, then plaintiffs are guilty of a breach of this implied contract.

It is of no consequence whatever that plaintiffs breached their implied contract by the commission of a tort. The cases are legion in which tortious conduct constitutes the breach of a contract. Defendant may waive the tort and sue in assumpsit, and, hence, may assert its cause of action by way of counterclaim. "Trespass is a concurrent remedy with assumpsit for many breaches of contracts which involve more than the mere payment of money, whether the breach consisted of nonfeasance, misfeasance, or malfeasance. Thus, where a duty arises under an implied undertaking to do an act requiring skill and fidelity, the breach of such duty may be either the subject of assumpsit on the implied promise or of an action for tort. In a proper case the tort may be waived by the

plaintiff and the action brought in assumpsit": 1 Standard Pa. Practice 381-82.

We think the case is ruled in principle by the decision of the Superior Court in Weiner v. Schwartz, 87 Pa. Superior Ct. 551, which was an action in assumpsit for work done and goods sold and delivered. Defendant introduced a counterclaim to the effect that defendant employed plaintiff to repair a boiler, that plaintiff so carelessly and negligently performed the work that the boiler was rendered useless, and defendant was obliged to purchase and have installed a new boiler. The court below struck off the counterclaim because it was in the nature of an action in trespass. In holding that this was error, the Superior Court said (p. 553):

"The criterion is whether under these facts he (defendant) must bring an action of trespass, or may proceed in assumpsit. If assumpsit lies, the counterclaim is proper. . . . The counterclaim is founded upon the failure of the plaintiff to keep his engagement to repair the boiler in a careful and workmanlike manner, and owing to the breach of this contract, defendant has been required to get another boiler . . . the original boiler being worthless. We think the counterclaim should have been allowed to stand."

Plaintiffs' theory of the case finds no countenance in the decision of the Supreme Court in O'Brien et al. v. O'Brien, 362 Pa. 66. It is true that the court there held that a claim which rests in tort cannot be made the basis of a counterclaim in action of assumpsit. But it is obvious, on the mere reading of the opinion, that plaintiff's alleged tortious conduct did not constitute a breach of contract, and the court so ruled (page 73).