**Hannigan v. S. Klein's Department Store**

—————————, for plaintiff.
—————————, for defendant.

ANDERSON, *J.*, February 13, 1976—On January 13, 14, and 15, 1975, a trial of the above captioned case was held before the undersigned sitting with a jury. The action arose out of an alleged assault and battery on Catherine Hannigan by a store detective, one Daniel Dougherty, at S. Klein's Department Store in Springfield, Pennsylvania, and her alleged arrest and detention by him.

The jury returned a verdict in favor of Catherine Hannigan, who is deceased, in the amount of $35,000 compensatory damages, and $52,500 punitive damages; and in favor of her husband, Eugene Hannigan, in the amount of $25,000 compensatory damages.

Defendant filed motions for a new trial and for judgment n.o.v., asserting that under the facts of the case Klein's was not liable for the wrongdoing of its employe; punitive damages were not justified; and the verdicts were excessive.

After considering the record and the briefs and argument of counsel, the court ordered a remittitur of portions of the verdict, which remittitur was accepted by plaintiffs. The awards, as remitted, are as follows: to Catherine Hannigan, $35,000 compensatory damages, $17,500. punitive damages; to Eugene Hannigan, $17,500 compensatory damages.

FACTS

On the evening of February 20, 1968, Catherine Hannigan, a 39-year-old housewife, and her two sisters, Mary Ann Bosco and Joan Palermo, drove to the S. Klein's Department Store, Springfield, Delaware County, Pennsylvania. Ms. Bosco parked the car and the women entered the store to shop. Mrs. Hannigan purchased underwear for herself on the first floor, which was put into one bag, and a child's coat on the second floor. The bag for the coat was too small, and as packaged by the cashier, between one and three inches of the coat protruded. The sales slip was affixed to the outside of the bag with staples. The three women were shopping on the first floor, when Ms. Bosco noticed a man, later identified as store detective Daniel Dougherty, watching them. The trio left the store and went to their car in the parking lot. Mrs. Hannigan placed her bags in the back seat. As she was getting into the car, Dougherty, who had followed the women to the car, came up and grabbed her left arm tightly and questioned her about the coat. Dougherty was in civilian clothes, and did not identify himself as a store detective. Dougherty reached into the car and pulled out the bag containing the coat. In so doing, Mrs. Hannigan was thrust back against the door of the car, hitting her right side. Dougherty questioned her further about the purchase of the coat, stated that the packaging was against store policy and tore off the sales slip and examined it. He insisted that Mrs. Hannigan accompany him back into the store.

Mrs. Hannigan resisted this demand for about five minutes, after which Dougherty took her arm and walked with her back into the store. Dougherty led Mrs. Hannigan to the cashier who

had bagged the coat, and berated him in her presence and in the presence of other employes. He specifically mentioned the problems posed by shoplifters. He then accompanied Mrs. Hannigan to the store exit and apologized to her for bringing her back into the store.

Mrs. Hannigan was very upset by the incident. Initially, she believed Dougherty to be a robber. She was alarmed by his tone of voice and manner and his implied accusation of thievery. Her act of returning with him to the store was not one of free will.

As a result of the incident, Mrs. Hannigan sustained bruises on her arm where Dougherty had grabbed her. She suffered a crippling reoccurrence of rheumatoid arthritis and experienced stomach pains from a flare-up of a duodenal ulcer. Her physician, James S. Faires, M.D., testified unequivocally that there was a direct causal connection between the incident and the aggravation of her pre-existing conditions. Within five months of the incident she returned to her previous state physically. However, her husband and two sisters testified that Mrs. Hannigan was never the same emotionally, and that for the remaining six and one-half years of her life[1] she never resumed marital relations with her husband; she could not do her household chores as before; and she resisted going out in public.

## DISCUSSION

### RESPONDEAT SUPERIOR

Defendant contended that, as a matter of law, it was not proper for plaintiff, Catherine Hannigan,

---

1. In October 1974, Mrs. Hannigan died of cancer, which was unrelated to the incident of February 1968.

to seek to recover both compensatory damages and punitive damages against Klein's, as the employer of Daniel Dougherty, because those awards are mutually exclusive. Specifically, defendant contended that the court erred in refusing to charge the jury that "where an employee attempts to accomplish a proper result in an outrageous fashion it is not within the scope of his employment"[2] and accordingly the employer is not bound or liable for the actions of the employe. Defendant offered as support for the above principle the case of McMaster v. Reale, 177 Pa. Superior Ct. 429, 110 A. 2d 831 (1955).

Defendant's argument is initially persuasive, in that punitive damages may only be awarded for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others: Restatement Torts §908(1) and comment b.

However, in Farneth v. Commercial Credit Co., 313 Pa. 433, 442, 169 Atl. 89 (1933), it was held that punitive damages are recoverable against an employer for the tort of an employe. In that case, an agent knowingly caused the arrest and trial of an innocent person.

It follows that the term "outrageous" when used in the context of vicarious liability cases such as McMaster v. Reale, supra, has a different meaning than when used with respect to punitive damages. An examination of the cases involving the doctrine of respondeat superior indicates that the real issues are: (1) whether the objected-to conduct occurred during the course of employment; (2) whether it was within the scope of the em-

---

2. Defendant's point for charge number 13.

ploye's assigned or anticipated duties; and (3) whether the employe's *intent* was to further the interest of his employer.

In Brennan v. Merchant & Co., Inc., 205 Pa. 258, 54 Atl. 891 (1903), the Supreme Court of Pennsylvania reversed the grant of a compulsory nonsuit in favor of the employer of a wagon driver. The driver had seen an eight-year-old boy standing on the side of his moving wagon, and without warning, struck the boy with his whip, knocking him off the vehicle. The court held that if the wrongful act was done by the servant to gratify personal ill will or malice and was not done in the execution of his master's business, the master would not be liable. If, on the other hand, the servant went beyond the strict line of his duty or authority as a result of bad temper or a lack of judgment or discretion; or was acting under the influence of passion aroused by the circumstances and the occasion, then he would be acting within the scope of his employment and the employer would be liable.

Specifically, the court said:

"At the time of the accident, Larkins had the custody and management of the wagon, and was driving it for the owner, the defendant company. The driver's control of the wagon carried with it the employer's authority to protect it and to prevent persons from getting on it, as well as to remove persons from it. It was not only the right of the driver to remove trespassers from the wagon, but also his duty to his employer to do so. He, therefore, was authorized to eject the boy from the wagon and could use the necessary force for that purpose. If his act in striking the boy was intended to remove him by force from the wagon, it would

be the act of his employer for which the latter would be responsible. If, on the other hand, the purpose of the driver was not to cause the boy to leave the wagon, but to inflict punishment upon him to gratify the ill will of the driver, the defendant company is not responsible for the wrongful or tortious act. It would not be an act done by the employee in the execution of his employer's business, although it was performed while he was in the service of the employer. It would be an act of the employee directed against the boy independently of the driver's contract of service, and in noway connected with, or necessary for, the accomplishment of the purpose for which the driver was employed. The negligent performance of the act, therefore, would impose no liability on the employer." Id at 262.

See also Howard v. Zaney Bar, 369 Pa. 155, 85 A. 2d 401 (1952) (bartender not acting within the scope of his employment when he shot a customer who was making advances to a woman patron); and Potter Title & Trust Co. v. Knox, 381 Pa. 202, 113 A. 2d 549 (1955) (an employe, of a rival company who without authorization or provocation, shot into a crowd of striking taxi drivers standing on a street corner, killing one man, was acting on a "frollic" of his own). In McMaster v. Reale, supra, it was held that a construction company was not liable for damages when a foreman kicked, and slapped the face of a boy he found near an open sewer ditch at a work site. As in the three cases cited above, it could be found that the employe was not acting in the execution of his employer's business, but rather that his purpose was to inflict punishment to gratify ill will.

In the instant case, the facts and the inferences to be drawn from them were not reasonably in dis-

pute. On the night in question, Daniel Dougherty was employed at Klein's as a store detective. Dougherty was therefore acting during the course of his employment. Investigating cases of possible theft, apprehending shoplifters and reprimanding store employes who fail to observe security rules and regulations are all acts which fall within the duties which can reasonably be expected to be performed by store detectives. Dougherty's behavior with respect to Mrs. Hannigan was always in furtherance of the security of the store and was therefore in execution of his master's business. Although he showed lack of judgment and discretion and bad temper, and although he may have acted with a reckless indifference to Mrs. Hannigan's interests, there was absolutely no evidence that Dougherty was motivated by *personal* ill will or malice. Therefore, the only possible conclusion is that Dougherty was acting within the course and scope of his employment, rendering Klein's liable to plaintiffs for all compensatory and punitive damages which were appropriate, See Farneth v. Commercial Credit Co., 313 Pa. 433 (1933).

In the factual context of the instant case, defendant's point for charge number 13 was inappropriate and would have misled the jury.

## PROPRIETY OF AWARD OF PUNITIVE DAMAGES

Defendant next contended that under the facts of the instant case, plaintiff, Catherine Hannigan, was not entitled to punitive damages as a matter of law because Dougherty's conduct was not "outrageous." In support of this position, defendant cited the Restatement Torts §908, and Chambers v. Montgomery, 411 Pa. 339, 192 A. 2d 355 (1963).

The rule for punitive damages set forth in sec-

tion 908 of the Restatement of Torts was adopted in Pennsylvania in Focht v. Rabada, 217 Pa. Superior Ct. 35, 268 A. 2d 157 (1970). It provides:

"§908.  PUNITIVE DAMAGES.

"(1) 'Punitive damages' are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct.

"(2) Where punitive damages are permissible, their allowance and amount are within the discretion of the trier of fact. In assessing such damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff which the defendant caused or intended to cause, and the wealth of the defendant."

Comment b states, in part:

"Punitive damages are awarded only for outrageous conduct, that is, for acts done with a bad motive or with a reckless indifference to the interests of others."

Comment e states, in part:

"In determining the amount of punitive damages, as well as in deciding whether they shall be given at all, the trier of fact can properly consider not merely the act itself but all the circumstances including the motives of the wrongdoer, the relations between the parties, and *the provocation or want of provocation for the act . . . .*" (Emphasis added.)

In the instant case, there was no evidence that Dougherty acted with a bad motive, so the issue is whether his behavior evidenced a reckless indifference to Mrs. Hannigan's interests.

We agree with defendant that the slight assault and battery that took place at the car would not, in

and of itself, be sufficient to support an award of exemplary damages. See Chambers v. Montgomery, 411 Pa. 339 (1963). However, serious physical injury is not a prerequisite for every award of punitive damages: Restatement Torts §908, comment c.[3]

We must, instead, consider the totality of the circumstances. Mrs. Hannigan was shopping in Klein's at the latter's implied invitation. Her behavior while in the store was not such as to invite suspicion, and she was in no way responsible for the manner in which the coat was packed. In short, she was a totally innocent victim.

Dougherty, in the performance of his duties, had every right to investigate the possibility of shoplifting when he noticed the improperly packed bag. But it was imperative that he proceed in a reasonable and courteous manner. Instead, he followed Mrs. Hannigan into the darkened parking lot and initiated a fear-provoking confrontation, which included an unlawful assault and battery upon Mrs. Hannigan. What is worse, after Dougherty had examined the sales slip and questioned Mrs. Hannigan and thus had facts before him which should

---

3. In the following cases punitive damages were allowed although severe physical injury was not a factor: Farneth v. Commercial Credit Co., 313 Pa. 433, 169 Atl. 89 (1933) (agent of company caused false arrest); Huling v. Henderson, 161 Pa. 553, 29 Atl. 276 (1894) (action for intentionally killing shade trees by excessive trimming); Kennedy v. Erdman, 150 Pa. 427, 24 Atl. 643 (1892) (trespass for tearing down a fence and placing it on plaintiff's corn); Barnett v. Reed, 51 Pa. 190 (1865) (malicious abuse of process); Cherry v. Harrison, 55 D. & C. 2d 230 (C.P. Alleg. Co. 1971) (refusal to allow relocation of water lines across property in accordance with deed); Lutz v. Brookline Savings & Trust Co., 117 Pitts.L.J. 239 (1969) (intimidation in debt collection caused emotional distress).

have dispelled the suspicions of a reasonable man, he insisted that Mrs. Hannigan accompany him back into the store. His insistence continued notwithstanding Mrs. Hannigan's refusals. That Mrs. Hannigan was compelled physically by Dougherty to re-enter the store was not proved. However, it was clear that she felt coerced, if not physically, then certainly psychologically, and her feelings were reasonable under the circumstances. When Dougherty berated the clerk, and railed against shoplifters in Mrs. Hannigan's presence, the implication was that Mrs. Hannigan had been suspected of theft. That this was done in the presence of bystanders added to Mrs. Hannigan's embarrassment.

The court fully charged the jury on the requisites for an award of punitive damages. The jury had reason to find that Dougherty's behavior towards Mrs. Hannigan was outrageous, because in over-zealously safeguarding his employer's interests, he was recklessly unmindful of the interests of Mrs. Hannigan and the duties owed her.

### EXCESSIVENESS OF AWARD — COMPENSATORY DAMAGES

Defendant contended that the compensatory damages awarded to Catherine Hannigan and Eugene Hannigan in the amounts of $35,000 and $25,000 respectively were excessive. This court agreed with respect to Eugene Hannigan and decreased his award to $17,500.

The out-of-pocket expenses attributable to the accident were nominal[4] and related to medical treatment beyond what would have normally been

---

4. Something in excess of $18.00.

occasioned by Mrs. Hannigan's pre-existing conditions. The awards therefore are in the main obviously intended to compensate Mrs. Hannigan for pain and suffering, and loss of life's pleasures; and Mr. Hannigan for loss of consortium.

As was indicated above, the medical testimony was that Mrs. Hannigan had physically recovered within five months of the incident. However, there was additional testimony to the effect that Mrs. Hannigan never fully recovered from the depression that resulted from the incident and that she never resumed marital relations with her husband.

The testimony regarding the residual effect of the incident on Mrs. Hannigan's emotional health was somewhat clouded by the existence of subsequent illness, which may have been a contributing factor, or even an intervening and superseding cause.

However, defense attorney, Edward R. Murphy, Esquire, indicated early in the proceedings, out of the presence of the jury, that he would object to any testimony relating to the breast cancer that was discovered in 1968, subsequent to the incident of February 20, and the resulting mastectomy performed on Mrs. Hannigan. Mr. Murphy contended that since plaintiffs' expert witness could not testify that there was a causal connection between the incident and the cancer, any testimony on the issue might prejudice defendant. Thereafter, there were a few scattered references to Mrs. Hannigan's cancerous condition by plaintiffs' witnesses during direct examination. Defendant chose neither to cross-examine on the issue nor to introduce evidence of its own. Therefore, although this court, based on the facts within its knowledge,

might well have concluded that by 1969, Mrs. Hannigan was suffering physically and emotionally from the effects of cancer and the related surgery, this theory was not urged upon the jury, and in order for the jury to have reached the same conclusion, they would have had to engage in speculation and guess. In view of the restricted nature of the testimony relating to Mrs. Hannigan's medical condition after the incident, which was at the insistence of defense counsel, the jury was justified in finding that as a result of that incident, Mrs. Hannigan suffered disability for a period of six and one-half years, and that Mr. Hannigan suffered a loss of conjugal rights and otherwise experienced a diminution of his wife's aid and company for a like period of time. Therefore, substantial verdicts were justified, and the awards for compensatory damages, as remitted were not excessive.

## EXCESSIVENESS OF AWARD — PUNITIVE DAMAGES

Punitive damages are penal in nature. They are imposed to punish a wrongdoer and to deter others from similar conduct in the future: Restatement Torts §908, comment a.

While the punitive damages must bear a reasonable relationship to the actual damages, Givens v. W. J. Gilmore Drug Co., 337 Pa. 278, 285, 10 A. 2d 12 (1940), if defendant is to be punished, his financial status is relevant in determining what will constitute a sufficiently heavy penalty: Aland v. Pyle, 263 Pa. 254, 256, 106 Atl. 349 (1919); Restatement Torts §908, comment e. In the instant case the court denied plaintiffs' offer to present to the jury evidence of defendant's net worth, be-

cause of its possible prejudicial effects upon the jury. However, it is common knowledge that S. Klein's, Inc., is a large corporation with many retail department stores in the northeast portion of the United States. Therefore, in order for the punitive damages to fulfill its purpose as a punishment and deterrent, substantial damages were warranted.

There is no set formula for setting punitive damages. An upper limit was indicated in Voltz v. General Motors Acceptance Corp., 332 Pa. 141, 2 A. 2d 697 (1938), where punitive damages almost treble the actual damages were held to be excessive. On the other hand, in Certified Laboratories of Texas, Inc. v. Rubinson, 303 F. Supp. 1014 (E.D. Pa. 1969), the federal court, applying Pennsylvania law, awarded damages double the compensatory damages, and in Arye v. Dickstein, 337 Pa. 471, 12 A. 2d 19 (1940), the Pennsylvania Supreme Court reduced an award for punitive damages to an amount equal to compensatory damages. However, in the majority of cases we examined, where compensatory damages were substantial, punitive damages were allowed when they were no more than half the compensatory damage. See, e.g., Hughes v. Babcock, 349 Pa. 475, 37 A. 2d 551 (1944); Rider v. York Haven Water & Power Co., 251 Pa. 18, 95 Atl. 803 (1915), after retrial, 255 Pa. 196 (1916); Esmond v. Liscio, 209 Pa. Superior Ct. 200, 224 A. 2d 793 (1966); Murphy v. Cleland Simpson Co., Inc., 68 Lack. 58 (1967).

Therefore, although we found that the amount of the award for punitive damages was not improper as a matter of law, we felt that an award in an amount half the compensatory damages was more in conformance with Pennsylvania case law. Ac-

cordingly, we ordered the punitive damages reduced from $52,500 to $17,500.

## CONCLUSION

For the reasons stated above, the verdicts were ordered remitted as indicated, and the motion for judgment n.o.v. and motion for new trial were denied.