MOSBACK, RESPONDENT, *v.* SMITH BROTHERS SHEEP CO. ET AL., APPELLANTS.

(No. 4,869.)

(Submitted September 25, 1922.    Decided November 13, 1922.)

[210 Pac. 910.]

*Trespass—When Willful or Malicious—Measure of Damages— Exemplary Damages—Evidence—Harmless Error—Witnesses —Declarations of Deceased Agent of Corporation—Admissibility—Discretion—Instructions.*

Trial—Evidence—Erroneous Admission Cured by Instruction.
   1. Error in the admission of testimony, in an action for damages for forcibly removing plaintiff's furniture from a dwelling-house on premises leased from defendant corporation, describing the appearance of his wife when the wrong was committed, *held* to have been cured by an instruction that the jury in arriving at the amount of the damages should disregard all matters tending to arouse their sympathy or excite their passions, *etc.*

Same—Refusal of Instruction—When Proper.
   2. Refusal of an instruction is proper where there was no evidence justifying its giving.

Trespass—When Willful and Malicious.
   3. Where in an action for damages for the wrongful removal of plaintiff's furniture from a leased dwelling the evidence showed that the act was done over the protest of plaintiff and the articles were

[65 Mont. 42.]

left on the public highway, an instruction that a trespass after being forbidden was willful and malicious was proper.

Same—Exemplary Damages—Evidence Admissible.

4. Where punitive damages are claimed, all the circumstances immediately connected with the transaction tending to show the motive of the defendant or that he acted intentionally and maliciously are admissible in evidence.

Same—Exemplary Damages—Discretion.

5. Where acts constituting a trespass are shown to be wanton, malicious or oppressive and of such a character as to indicate a reckless disregard of the rights of the plaintiff, the jury in their discretion may award a reasonable amount as punitive damages in addition to compensatory damages.

Same—Instructions—When Erroneous as Peremptory.

6. An instruction that the plaintiff was entitled to recover such actual damages as they found were brought about by the removal of his furniture from the dwelling-house to the county road, without also submitting to the jury the question whether it was rightful or wrongful, was erroneous as in effect a peremptory instruction to find in favor of plaintiff.

Same—Damages—Difficulty in Producing Evidence.

7. The mere fact that it was difficult for plaintiff to produce evidence touching the damages sustained by injury to his household goods and wearing apparel by their removal to the county road and being left exposed to the elements did not excuse him from furnishing some pecuniary estimate to the jury upon which to base a verdict, and where none was furnished, a verdict in his favor was unwarranted.

Same—Measure of Damages.

8. The measure of damages for malicious trespass of the nature of the above is the difference in the value of the articles immediately before their removal from the dwelling-house and their value immediately after their return, the expense of returning them, the value of their use in the meantime, and the value of the articles which were totally destroyed as it was at the time of their removal.

Witnesses—Declarations of Deceased Agent of Corporation—Admissibility —Discretion.

9. Under section 10535, subdivision 4, Revised Codes of 1921, determination of the question whether testimony with relation to acts or conversations had with a deceased agent of a corporation is admissible or not rests in the discretion of the trial court.

*Appeals from District Court, Meagher County; E. H. Goodman, Judge.*

Action by Louis Mosback against the Smith Bros. Sheep Company and another. From a judgment for plaintiff and an order overruling a motion for a new trial, defendants appeal. Reversed and remanded.

*Messrs. McIntire & Murphy,* for Appellants, submitted a brief; *Mr. C. A. Spaulding,* of Counsel, argued the cause orally.

*Mr. Earle F. Angell* and *Mr. Edward Horsky,* for Respondent, submitted a brief; *Mr. Horsky* argued the cause orally.

MR. JUSTICE COOPER delivered the opinion of the court.

This action was brought by the plaintiff against the Smith Bros. Sheep Company, a corporation, and J. Stanley Smith, its president, to recover damages for willfully, maliciously and forcibly removing the plaintiff's household effects from the dwelling-house standing upon lands leased by him from the corporation. Since the cause of action accrued J. Stanley Smith has died, and his widow, as executrix of his last will and testament, has been substituted as a defendant. The lease under which the plaintiff occupied the house, cultivated the lands, and raised crops thereon was in full force at the time of the alleged trespass. The jury awarded $500 actual damages against both defendants, and against the corporation $1,500 punitive damages. From the order overruling a motion for a new trial and from the judgment defendants appeal.

As the case will go back to the district court for a new trial, we shall not discuss the evidence any more than is necessary to dispose of the legal questions raised on these appeals.

Over defendants' objection, the court permitted Rasmus In- [1] terland to describe the appearance of the plaintiff's wife while Smith and the others engaged with him were removing the property from the house. By the court's instructions numbered 5, 6 and 7 the jury were told that in arriving at the detriment, if any, occasioned to the plaintiff, they should disregard all sentimental notions as to the value of the personal property alleged to have been damaged, or appeals, if any, made to their sympathy or to excite their prejudice or passions and allow no damages to the property of plaintiff's wife; that there could be "no recovery of damages for mental pain or suffering because of an injury to a person other than plaintiff, for instance, to a husband, wife or child"; that if they believed injury was caused to the plaintiff by any act or acts of the defendants or their agents, still that would not

permit them to add any damages for mental pain or suffering which might have been occasioned to the wife of plaintiff thereby; and that "for an injury to property no damages for injury to the feelings of the owner of such property because of its injury can be allowed." This part of the charge confined the deliberations of the jury to the question of damages growing out of the removal of plaintiff's property from the house and the injuries consequent thereon, and freed their minds of all other considerations. If error was committed in admitting the evidence above referred to, its effect was rendered harmless by the language of the charge quoted.

Assignment No. 7 relates to the same subject matter as [2] No. 10. Both may be considered together. In No. 7 the defendants complain because the court refused to give their requested instruction numbered 13, which reads as follows: "A tort or wrong committed by mistake in the assertion of a supposed right, or without any actual wrong intention, and without such recklessness as evinces malice or conscious disregard of the rights of others, will not warrant the giving of punitive or exemplary damages." There was no evidence to justify the giving of this instruction.

The plaintiff's undisputed evidence was: That Smith came [3] to him in a field a little over half a mile from the house immediately before the commission of the acts complained of, and told him that he had to have the house and make room for some other parties who were going to move in. "I asked him why so, because he told me a few days ago three rooms would be plenty for the others. * * * The next time I saw him he said he was going to move out the household goods, and I told him I couldn't leave the place; I had to take care of the crop and had to be where I could watch it. He told me I could put up a tent wherever I wanted to and stay in it, and I told him my wife was to have a child in the near future. He said it didn't make any difference to him. I didn't have any further talk with him, and he turned around and left me"; that ten or fifteen minutes thereafter

he went to the house and found Smith, John Duncan, and two or three other men carrying out the furniture; that he told Smith "to get out of there and put the stuff back in the house where it belonged; and that he [Smith] told the boys to keep on." This evidence justified the court in giving instruction No. 12, as follows: "A trespass after being forbidden is willful and malicious, and if from the evidence you find that plaintiff forbid J. Stanley Smith, individually or as the president of the Smith Bros. Sheep Company, from removing plaintiff's personal property, and thereafter J. Stanley Smith for himself or on behalf of Smith Bros. Sheep Company removed said personal property from plaintiff's home or possession, or placed such personal property on the public highway, then such act was a willful and malicious trespass."

"Whatever is done," says Chief Justice Shaw in *Wills* v. *Noyes,* 12 Pick. (Mass.) 324, "willfully and purposely, if it be at the time wrong and unlawful, and known to the party, is in legal contemplation malicious. That which is done contrary to one's conviction of duty, or with a willful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or, in the language of the charge, to do a wrong and unlawful act, knowing it to be such, constitutes legal malice." (See, also, *Lynd* v. *Picket,* 7 Minn. 184 (Gil. 128) 82 Am. Dec. 79; *Anderson* v. *International Harvester Co.,* 104 Minn. 49, 16 L. R. A. (n. s.) 440, 116 N. W. 101; 38 Cyc. 1146; *Kennedy* v. *Erdman,* 150 Pa. 427, 24 Atl. 643; *Smalling* v. *Jackson,* 133 App. Div. 382, 117 N. Y. Supp. 268.)

Both compensatory and exemplary damages being claimed, all [4] the circumstances immediately connected with the transaction tending to show the motive of the defendants or that they acted intentionally and maliciously are admissible in evidence; and where the acts complained of are shown to be [5] wanton, malicious or oppressive, and of such a character as to indicate a reckless disregard of the rights of the plaintiff, the jury, in their discretion, may award a reason-

able amount as punitive damages, in addition to compensatory damages. (Sec. 8666, Rev. Codes 1921; *Anderson* v. *International Harvester Co., supra; Johnson* v. *Wolf,* 142 Minn. 352, 172 N. W. 217; *Day* v. *Woodworth,* 13 How. 363, 14 L. Ed. 181 [see, also, Rose's U. S. Notes]; Sedgwick on Damages, secs. 347–357.)

In specification No. 10 the defendants complain of the per-
[6]   emptory nature of the court's instruction of that number. The aptness of counsel's criticism will be made apparent, if we parenthesize the words "if any" wherever they appear therein and read it without them. It is as follows: "The jury are instructed that the plaintiff is entitled to recover in this case such actual damages (if any) to his personal property as will compensate him for the injuries thereto, and which were the natural and proximate consequences of the acts complained of in the complaint, and in arriving thereat you may take into consideration the injury (if any) to the property, the length of time (if any) that plaintiff was deprived of the use or possession thereof, mending or repairing articles of property (if any), and expenses incurred (if any) in the effort to avoid the injurious consequences of such property being removed and exposed to the weather and returning it to the plaintiff's home, or the reasonable value of such efforts (if any), to avoid the injurious consequences of such trespass, and the lessened value or diminished serviceability of such articles of plaintiff's personal property as were removed or injured by such trespass, together with all the remaining facts and circumstances in the case."

By its first sentence the instruction tells the jury that the plaintiff is entitled to recover such actual damages as they should find were brought about by the removal of the property from the house to the county road, without reference to whether the taking was wrongful or not. In other words, it is not qualified by language which would give the jury to understand that the question whether the taking was rightful or not was one for their consideration as a fact and to be

decided by them in the affirmative before the *quantum* of damages became a subject of inquiry at all. The instruction was vulnerable to the objection urged against it by the defendants' counsel, because the court, in giving it, determined as a question of law the vital question of fact it was the duty of the jury to decide.

Upon the question of the amount of damages suffered, all [7] counsel claim is that the jewelry and valuable papers, consisting of receipts for money sent away, were removed; that shoes and clothing belonging to plaintiff and his family and bedding, consisting of blankets, three or four quilts, and bedspreads enough to make up two full beds, and part of one that had been used for the children, were forcibly taken from the house and deposited upon the public highway six miles distant; that he found them there about 5 o'clock on the evening of May 6; that it rained on the morning of the 7th; that it was cold, damp, windy and foggy on the 8th and started to snow in the morning about 10 o'clock and continued to snow part of that day and on the morning of the 9th, and that where the goods were piled there were about seven inches of snow; that his wife and children were obliged to sleep at the house of a neighbor; that a fur coat, wearing apparel, and bedding were chewed up by field mice and had to be washed and repaired. He testified that he paid $800 or $900 for the household goods when they were new, and that on the day of the occurrence they were worth twice as much as they cost on account of war prices. On cross-examination he testified that the property was all taken back to the house by him, and none of the articles were found missing. He put no estimate of value upon the time and labor spent by him in returning them nor upon the amount of damage the property suffered by reason of the exposure. He testified that he paid $6 each for the bedspreads, $5 each for the quilts, $7 for the blankets, and $2.50 for the pillows; that the bedding consisted of two bedspreads, three or four quilts, two blankets, and about six pillows, all of which, except one, they were able to use after

they had been washed and repaired. The testimony of Mrs. Mosback, added to this, is all the evidence upon the condition of the property either before or after the taking, and its value. Her testimony is as follows: "There were five or six little tables and one dining-room table taken. They took a coffee-pot, tea-kettle, frying-pans, some stew kettles, water-pail, wash dishes, and such things as that. There was some dried fruit and dried fish. There was one blanket, two bedspreads, five pillows, five pillowcases, four sheets, and six quilts. They were all chewed by the mice. Both mattresses were chewed by the mice. Mr. Mosback and I had had the furniture for three years and some of the bedding. Mr. Mosback had the fur overcoat when we were married. We were married on the 30th of March, 1918. One of the suits of clothes Mr. Mosback had never had on yet." Neither the plaintiff nor any other witness testified to the kind of fur overcoat the one referred to was, the length of time it had been worn, nor its value at any time; nor was any estimate of the amount of deterioration the property suffered while it was out of its place in the house made by anyone. Neither did any witness give any evidence by which the jury could measure the expense of returning the property to the house from the county road, nor the reasonable value of the time and labor spent in getting it back into place, nor the value its use to the plaintiff would have been to him during the five days he and his family were deprived thereof. The somewhat difficult duty of fixing the compensation to which he might be entitled for the invasion of his rights and determining what amount should be awarded does not excuse him from furnishing the jury with some pecuniary estimate of the several items of damage suffered. As said by this court in *Bush* v. *Chilcott,* 64 Mont. 346, 210 Pac. 907: "While it is true that in cases of this character damages cannot be ascertained with mathematical certainty, yet a jury must have some competent evidence before it from which to arrive at its conclusions, and must not base its verdict upon mere conjecture and speculation. And this rule is not altered

by the fact that the ascertainment of the proper amount of damages is a matter of practical difficulty. The rule is laid down in Corpus Juris as follows: 'Hence, where an action is for damages which are uncertain or have not been admitted, the burden is on plaintiff to establish the amount thereof, and that they resulted from the act of defendant.' " (17 C. J. 1023; 8 R. C. L. 438.)

What the detriment to the property of plaintiff was and the amount which would compensate him for the time and labor necessarily spent in repairing the damage could not be stated with exactness; but, being left, as the jury were, with no · estimate of value, other than as given above, the award was the result of speculation and conjecture. A verdict having no better foundation cannot be permitted to stand. Compensation is ordinarily the standard for the measure of damages for a trespass, and a party ought not to be liable to pay, more than enough to make the. wronged party whole. The [8] plaintiff's recovery of actual damages should be limited to the difference in the value of the property immediately before its removal and its value immediately after its return. In addition thereto, he is entitled to recover for the time and money actually and honestly expended in pursuit of his property, reloading it, hauling it back, and returning it to place in his home. He is also entitled to the value of its use during detention. For any item of property totally destroyed he would be entitled to recover an amount equal to the value of such article at the time of its taking. If the defendants were guilty of oppression, fraud, or malice, actual or presumed, in addition to the actual damages proven, the jury could award damages for the sake of example and by way of punishment of the guilty parties. (Rev. Codes 1921, sec. 8666; *De Celles* v. *Casey*, 48 Mont. 568, 139 Pac. 586.)

With reference to the contention made by the defendants as [9] to the inadmissibility of Mosback's testimony touching his conversation with J. Stanley Smith, it is sufficient to say that the fourth subdivision of section 7891, Revised Codes of 1907,

as amended by Chapter 41, Laws of 1913, governing the admissibility of evidence of acts and communications between a proposed witness and a deceased agent of a corporation, in force at the time of the trial, has since been amended and is now section 10535, Revised Codes of 1921, so that determination of the question whether the testimony of Mosback as to the acts and conversations of J. Stanley Smith, as the agent of the defendant corporation, should or should not be admitted under section 10535, will rest in the discretion of the trial court.

The other assignments of error have been carefully examined and are found to be without substantial merit.

The judgment and order appealed from are reversed and the cause is remanded, with directions to the district court to grant a new trial.

*Reversed and remanded.*

ASSOCIATE JUSTICES FARR, HOLLOWAY and GALEN concur.