No. 14450

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

EDWARD B. BUTCHER,

Plaintiff and Respondent,

-vs-

CHARLES PETRANEK and
GEORGE A. PETRANEK,

Defendants and Appellants.

---

Appeal from: District Court of the Tenth Judicial District,
Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

For Appellants:

Bradley B. Parrish, Lewistown, Montana

For Respondent:

Morrow, Sedivy and Olson, Bozeman, Montana

---

Submitted on briefs: February 23, 1979

Decided: APR 2 4 1979

Filed: APR 2 4 1979

_Thomas J. Kearney_
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Defendants Charles and George Petranek appeal from an order of the District Court, Fergus County, denying their motion for a new trial.

This case involves a dispute over a fourteen mile roadway across plaintiff Edward Butcher's land which Petraneks, owners of a neighboring tract, had used for some years with Butcher's permission. This same roadway was the subject of a quiet title action previously before this Court. Taylor v. Petranek (1977), ____ Mont. ____, 568 P.2d 120, 34 St.Rep. 905. In that case, this Court held that Petraneks did not have an easement in the road.

At the time the quiet title action was pending in the District Court, Butcher had planted the road over with wheat. Although Petraneks were fully aware that the matter was in litigation, on May 24, 1976, they trespassed on Butcher's land with a road grader and plowed a swath through the wheat field, approximately where the road had once been, before they were run off by Butcher. The swath plowed by Petraneks was about one-half mile long, twelve feet wide, and some four to six inches deep, thus stripping the topsoil.

On May 28, 1976, Butcher filed a complaint in the District Court praying for $1000 in actual damages to the land, $50,000 in punitive damages for injury to the land, $150 in actual damages for loss of the wheat crop damaged by the grader, and $50,000 in punitive damages for malicious destruction of the crops. Butcher also sought injunctive relief, which was granted and is not an issue on appeal.

Evidence adduced at trial indicated that when Butcher evicted Petraneks from his land, a somewhat violent altercation took place. Butcher claimed that George Petranek,

-2-

who was driving a pickup behind the road grader driven by Charles Petranek, rammed the horse Butcher was riding with the pickup. Butcher also testified that both Petraneks and their hired hand, who was riding in the pickup, advanced threateningly toward him, with Charles Petranek grabbing for Butcher's legs as he sat on his horse. Butcher testified he had to threaten Petraneks with a .22 caliber pistol before they would leave.

Other evidence established that Petraneks had several times in the past cut Butcher's fences and trespassed across his land. It was also shown that Petraneks are quite wealthy, having holdings (consisting chiefly of ranch and farmlands and rental properties in Lewistown) totaling more than $1,500,000.

On May 5, 1978, after a jury trial with the Honorable Bernard W. Thomas presiding, a verdict was returned in favor of Butcher. The jury awarded $825 actual damages with $10,000 punitive damages for damage to the land, and $100 actual damages with $10,000 punitive damages for destruction of the crops. Petraneks subsequently moved for a new trial on the ground that the award of punitive damages was excessive and given under the influence of passion and prejudice. The District Court denied the motion, and Petraneks appeal.

The issue on appeal is simply: Were the punitive damages awarded to Butcher by the jury excessive? Petraneks argue they were and therefore this Court must either reduce them or order a new trial.

In approaching this issue, we note that Petraneks are not challenging the award or amount of actual damages, totaling $925. Neither are they challenging the award of

punitive damages itself; they apparently concede that some award of punitive or exemplary damages is proper.

What Petraneks are challenging is the amount of the punitive damages awarded. Their argument essentially is that the amount of punitive damages awarded here ($20,000) is "patently excessive" to the point that "there can be no other conclusion than that the jury was influenced by passion, prejudice, or from improper motive."

The law governing punitive or exemplary damages is well developed in Montana and has been followed with unerring consistency by this Court. Since first enacted in 1895, section 17-208, R.C.M. 1947, now section 27-1-221 MCA, has read:

> "In any action for a breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury, in addition to the actual damages, may give damages for the sake of example, and by way of punishing the defendant."

From the numerous cases construing this section, general principles for its application may be derived. An early, yet relatively complete, statement of these basic principles is found in De Celles v. Casey (1914), 48 Mont. 568, 576, 139 P. 586, 588:

> "The amount to be awarded in this class of cases is lodged in the discretion of the jury; but this discretion is not unlimited or to be exercised arbitrarily. It will not do to say that the jury are free to make the measure of punishment whatever they choose, without any just or reasonable relation to the wrong done. No definite rule can be declared as to when the court should interfere and when it should not; yet since a new trial may be ordered when it appears that the jury have acted under the influence of passion and prejudice (Rev. Codes, sec. 6794), it follows that when the award is so large that it cannot be accounted for on any other theory and is wholly out of proportion to the wrong done and the cause of it, the conclusion is irresistible that it was measured by the passion and prejudice of the jury, rather than by an estimate made in the exercise of their discretion, and it becomes the duty of the court to set it aside."

Accord, Cornner v. Hamilton (1922), 62 Mont. 239, 245, 204
P. 489, 491.

In describing the necessary elements to justify such an
award, this Court a few years later stated:

> "A guilty intent on the part of the defendants
> is an essential to charge them with exemplary
> damages . . . 'While every legal wrong entitles
> the party injured to recover damages sufficient
> to compensate for the injury inflicted, not
> every legal wrong entitles the injured party to
> recover exemplary damages. To warrant the re-
> covery of such damages the act complained of
> must not only be unlawful, but must also partake
> somewhat of a criminal or wanton nature. And so
> it is an almost universally recognized rule that
> such damages may be recovered in cases, and only
> in such cases, where the wrongful act complained
> of is characterized by some such circumstances
> of aggravation as willfulness, wantonness, malice,
> oppression, brutality, insult, recklessness, gross
> negligence, or gross fraud on the part of the de-
> fendant.' (8 R.C.L. 585, 586.)" Luther v. Lee
> (1922), 62 Mont. 174, 179, 204 P. 365, 367.

The jury may also take into account whether the acts
complained of are "of such a character as to indicate a
reckless disregard of the rights of the plaintiff" in award-
ing a "reasonable amount" of punitive damages. Mosback v.
Smith Brothers Sheep Co. (1922), 65 Mont. 42, 46-47, 210 P.
910, 912.

Elaborating further on the concept of malice, we stated
in 1927 that:

> "'Malice, as a basis for exemplary damages, may
> be proved directly or indirectly; that is to say,
> by direct evidence of the evil motive and intent
> or by legitimate inferences to be drawn from
> other facts and circumstances in evidence.'
> (Klind v. Valley County Bank, 69 Mont. 386, 222
> Pac. 439.) 'The term "malice," as applied to
> torts, does not necessarily mean that which must
> proceed from a spiteful, malignant or revengeful
> disposition but a conduct injurious to another,
> though proceeding from an ill-regulated mind,
> not sufficiently cautious before it occasions
> an injury to another. If the conduct of the
> defendant was unjustifiable and actually caused
> the injury complained of by plaintiff, which was
> a question for the jury, malice in law would be
> implied from such conduct . . .'" Ramsbacher v.
> Hohman (1927), 80 Mont. 480, 487-88, 261 P. 273,
> 276.

-5-

"Implied malice may be shown by proof that defendant engaged in a course of conduct knowing it to be harmful and unlawful." Ferguson v. Town Pump, Inc. (1978), ___ Mont. ____, 580 P.2d 915, 921, 35 St.Rep. 824, 831.

In _Ramsbacher_, we went on to discuss the factors properly considered by a jury in setting the amount of damages and our function in reviewing the award:

> "Having concluded the jury was within its rights in allowing exemplary damages, arises the question, is the amount allowed on either cause of action excessive? The amount was largely in the discretion of the jury. 'The general rule is that an award of exemplary damages by a jury will not be disturbed as excessive, unless its amount, considered in connection with the facts, is indicative of passion, prejudice or corruption on the part of the jury. * * * The jury should take into consideration the attendant circumstances, such as the malice or wantonness of the act, the injury intended, the motive for the act, the manner in which it was committed and the deterrent effect upon others. * * * According to the general rule, it is proper for the jury to consider defendant's wealth and pecuniary ability in fixing the amount of damages.' (17 C.J. 994, 995.) There is evidence on all those points and it is presumed the jury considered it. 'The public good in the restraint of others from wrongdoing, as well as the punishment of the offender, is to be considered in estimating exemplary damages.' (Ward v. Ward, 41 Iowa, 686.) Based on those determinative factors and general principles, in this state the rule is that the amount of exemplary damages must be reasonable. 'Where the acts complained of are shown to be wanton, malicious or oppressive and of such a character as to indicate a reckless disregard for the rights of the plaintiff, the jury, in their discretion, may award a reasonable amount as the punitive damages, in addition to compensatory damages.' (Mosback v. Smith Brothers Sheep Co., 65 Mont. 42, 210 Pac. 910.) What was reasonable was for the jury to say, subject to the judgment of the trial court, upon motion for new trial, and the judgment of this court, upon appeal. Being a matter for the discretion of the jury, we do not see that the discretion was abused. We will not say the award is excessive nor that it is indicative of passion or prejudice nor that, under all the circumstances and in view of plaintiff's version of the case (accepted by the jury), it is even unreasonable." 80 Mont. at 489-90, 261 P. at 277. (Emphasis added.)

Petraneks argue that the amount of punitive damages awarded here is *per se* excessive because they are approximately twenty-two times the amount of the actual damages awarded. We rejected any such "mathematical ratio" approach to calculating punitive damages in Johnson v. Horn (1929), 86 Mont. 314, 318-19, 283 P. 427, 429:

> ". . . The courts have not established a definite formula to be followed in ascertaining whether an award for exemplary damages is excessive. As a consequence many courts hold that because an award of punitive damages is ten times the amount of actual damages awarded, as here, does not of itself demonstrate that the award is excessive.
>
> ". . .
>
> "An award of $1,000 exemplary damages might be excessive under certain facts and as against one of impoverished circumstances, and yet reasonable under different circumstances and as against one of more favorable financial condition."

Further, punitive damages may be awarded in cases where only nominal actual damages are awarded or even where no monetary value is placed on the actual damages suffered. Miller v. Fox (1977), ____ Mont. ____, 571 P.2d 804, 808, 34 St.Rep. 1367, 1371. It is therefore inconsistent to establish some mathematical formula or ratio for determining the amount of such punitive damages.

We have quoted extensively from these older decisions (and there are many others equally applicable) to illustrate that the principles governing this appeal are very well established and have been consistently applied. Applying these time-honored principles to the facts at hand, we conclude that the award of $20,000 in punitive damages against Petraneks is reasonable and supported by the evidence.

Undisputedly, Petraneks, with full knowledge of relevant pending litigation and gross disregard for the rights and property of Butcher, drove a road grader onto the latter's

property and deliberately plowed a half-mile long, twelve-foot wide swath through his growing wheat crop. The jury also heard Butcher testify that, when he rode up to confront the Petraneks, George Petranek rammed his pickup truck into Butcher's horse and Charles Petranek grabbed at Butcher's legs as if to pull him off his horse. From this set of facts, the jury was fully entitled to conclude that the Petraneks acted extremely maliciously.

Entering into the calculation of damages at this point is the wealth of the Petraneks. The jury was informed as to the large holdings of the defendants totaling more than $1.5 million. In determining what would be a suitable punishment (a legitimate statutory purpose) for the acts of the Petraneks, the jury could reasonably calculate that any smaller award would not be sufficient. Such a conclusion was for the jury to make, after listening to the testimony and weighing the evidence. On appeal, we will not disturb that conclusion.

Finally, Petraneks' assertion that the award of punitive damages was the result of passion or prejudice on the part of the jury is unsupported by any reference to the record, to improvident remarks by counsel or witnesses for Butcher, to incorrect or objectionable jury instructions, or to any other source. Petraneks accept that the jury acted reasonably in assessing the total actual damages suffered by Butcher at $925 out of a prayer for $1150. In the absence of any showing of the possible sources of passion or prejudice, it is inconsistent to assume that a jury, acting reasonably in assessing actual damages so precisely, suddenly was overcome by passion and prejudice in assessing punitive damages.

The judgment is affirmed.

_____
Justice

We concur:

_____
     Chief Justice

_____

_____
     Justices


Mr. Justice Daniel J. Shea, deeming himself disqualified, did not participate in this decision.