No. 80-87

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

CARL LAUMAN,

        Plaintiffs, Respondent and Appellant,

  vs.

LARRY O. LEE,

        Defendant and Appellant,

  and

KYLE J. WRIGHT and LESIA WRIGHT,

        Defendants and Respondents.

Appeal from:  District Court of the Eleventh Judicial District,
In and for the County of Flathead.
Hon. James Salansky, Judge presiding.

Counsel of Record:

    For Appellant:

        Keller and Gilmer, Kalispell, Montana
Robert Keller (Lee) argued, Kalispell, Montana
Trieweiler, Hoyt, Kalispell, Montana
Terry N. Trieweiler (Lauman) argued, Kalispell, Montana

    For Respondents:

        Warden, Christiansen and Johnson, Kalispell, Montana
Richard DeJana argued, Kalispell, Montana

Submitted: January 14, 1981

Decided: April 1, 1981

Filed: APR 1 1981

Thomas J. Kearney
                    Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Plaintiff Carl Lauman and defendant Larry Lee each appeal from the judgment entered following a jury trial in the Eleventh Judicial District Court, Flathead County.

Appellants raise the following issues:

1. Did Lauman suffer actual damages as a result of Lee's conduct to justify an award of exemplary damages?

2. Was there sufficient evidence to support the verdict in favor of Kyle and Lesia Wright?

3. Did the District Court err in allowing evidence of filing fees or witness fees?

4. Was it proper to instruct the jury that Montana law requires car headlights be visible for 500 feet?

5. Was the jury's award of exemplary damages influenced by passion and prejudice?

6. Did prejudicial error arise from granting eight total peremptory challenges to Lee and the Wrights without a showing that Lee's interests were hostile to the Wrights?

On the night of February 24, 1980, an automobile collision occurred just east of Kalispell between Lauman's vehicle and another vehicle apparently driven by Kyle Wright. Lauman, traveling eastbound out of town on U.S. Highway 2, slowed as he approached its intersection with Bernard Road and began to turn left across the westbound traffic lane onto Bernard Road. The Wright vehicle was traveling westbound on Highway 2 and collided with Lauman's car as he negotiated the turn. The collision demolished the right side of Lauman's station wagon and the right front end of the Wrights', including the right headlights. Lauman suffered physical injuries to his hip, back and neck.

Although under normal circumstances, the Wright vehicle would have had the right-of-way, there was evidence that the Wrights' headlights were not illuminated, or were so obscured by mud as to be ineffective. Neither Lauman nor a witness in the car following him had seen any approaching headlights. A second witness in the trailing vehicle reported seeing no lights until she noticed a flash of lights immediately before hearing the sound of the impact.

Larry Lee is Kyle Wright's stepfather and was the owner of the Toronado involved in the accident. He arrived at the scene shortly after the accident while the investigation was still in progress. When directed to the obscured condition of the remaining headlight by investigating officer Dana Kraut, Lee immediately began wiping the dim-beam headlight. Kraut halted Lee after one swipe, directed him to refrain from any further wiping, and momentarily left the immediate vicinity. After Kraut had stepped away, Lee backed up to the front of his car, and was seen wiping both left headlights from behind his back. Having cleaned the headlights, Lee and Kyle and Lesia Wright left the scene in his car. Officer Kraut was thereafter unable to test the visibility and illuminating characteristics of the headlights based on their condition at the time of the collision.

Lauman brought this action alleging negligence resulting in personal injury against Kyle and Lesia Wright, and negligent entrustment against Larry Lee. The complaint was later amended to include a claim for exemplary damages against Lee pursuant to section 27-1-221, MCA. The negligent entrustment count was dismissed at the close of the case. The jury found no negligence on the parts of the Wrights, but did award exemplary damages against Lee in the amount of $17,500, plus costs.

Lee moved the District Court for a new trial. Lauman as to the Wrights, moved the District Court for a judgment notwithstanding the verdict or in the alternative, a new trial on the issue of the Wrights' liability. All motions were denied. Lauman and Lee each appeal from the judgments and denials of their motions.

The jury found by special interrogatory that Larry Lee willfully violated the law at the scene of the accident, and that Carl Lauman suffered actual damages as a result of Lee's violation of the law. Based on these determinations, the jury made its award of exemplary damages. Lee argues the exemplary damage award is improper because Lauman suffered no emotional distress resulting from Lee's actions, there was no underlying tort, and any violation of law abridged an obligation to the state rather than to Lauman. Lee further insists Lauman did not suffer actual damages because the Wrights were found not negligent; and exemplary damages are not appropriate in the absence of actual damages.

Section 27-1-202, MCA, allows compensatory damages to every person who suffers detriment from the unlawful act of another. It is manifest from the plain meaning of this provision that if Lee committed an unlawful act which resulted in damages to Lauman, Lauman is entitled to compensation. It is equally apparent under section 27-1-221, MCA, that a jury may award exemplary damages where the defendant has been guilty of either actual or implied malice. Furthermore, implied malice may be shown by proof that a defendant engaged in a course of conduct knowing it to be harmful or unlawful. Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 132, 580 P.2d 915, 921, overruled on other grounds, Bohrer v. Clark (1978), _____ Mont. _____, 590 P.2d 117, 35 St.Rep. 1878.

-4-

Notwithstanding Lee's insistence to the contrary, Lauman claimed exemplary damages pursuant to section 27-1-221, MCA, rather than under the tort of outrage. The statutory framework of that section sets forth no specific requirement of an underlying tort or mental distress; nor will we imply such requirements through judicial construction. A plaintiff need only show actual damages pursuant to section 27-1-202, MCA. State v. District Court of Eighth Judicial District (1967), 149 Mont. 131, 423 P.2d 598 (hereinafter Larson).

Our function in reviewing the sufficiency of proof of actual damages is to determine whether there is substantial credible evidence in the record to support the jury's verdict. We must view the evidence in a light most favorable to Lauman, the prevailing party below, and where the record presents conflicting evidence, resolved by the jury, this Court is precluded from disturbing the verdict. This rule is particularly applicable when the District Court has passed upon the sufficiency of the evidence on motion for new trial and has upheld its sufficiency. Strong v. Williams (1969), 154 Mont. 65, 68-69, 460 P.2d 90, 92.

Lee indisputably wiped the headlights, thus destroying critical physical evidence relating to the plaintiff's theory of the case. Officer Kraut testified he would have considered the results of illumination tests in his investigation and determination of fault; and the Wrights' insurance adjuster stated he would have considered the same in his recommendation to the company concerning settlement. The issue finally was placed before the jury on conflicting testimony regarding the headlights, where the physical evidence would have been conclusive had it been available.

Although the precise extent of damages attributable to the destruction of physical evidence may indeed be elusive, we cannot say Lauman definitely was not damaged as a result of Lee's wanton actions. An identifiable basis for actual damages exists, which arises from the deprivation of Lauman to illumination tests and results. Available physical evidence proving inadequate illuminating powers would have enhanced Lauman's settlement potential or the probability of a plaintiff's verdict. Evidence conclusively proving otherwise may have saved Lauman the expense of litigating an unmeritorious claim. Such evidence was unavailable solely due to Lee's conduct, and Lauman's cause of action was concomitantly more speculative. The jury resolved the issue in finding that Lee's unlawful actions caused Lauman actual damages.

The failure of the jury to fix a monetary value as Lauman's damages does not of necessity indicate an absence thereof and consequently precludes the award of exemplary damages. We held in Larson, supra, that any party who can state a claim bringing him under section 27-1-202, MCA, may also pursue exemplary damages under section 27-1-221, MCA. The finding of actual damages is the primary requisite step toward any award of exemplary damages. Miller v. Fox (1977), 174 Mont. 504, 571 P.2d 804. The amount of actual damages bears no gravity in this regard.

Lauman's attack on the sufficiency of the evidence to support the verdict favoring the Wrights is also unpursuasive. The defense presented considerable evidence that Lesia Wright was a passenger in the Toronado, rather than the driver, and therefore free of any negligence. Kyle Wright, who admitted to being the driver, testified he turned on his headlights before leaving the Lee home and saw them reflected off the doors of the Lee garage. Lesia

-6-

Wright also noticed the reflection. Kyle then negotiated the distance from the house to the scene of the accident without incident, although it was dark and the interval included the crossing of a narrow, dangerous bridge. Dorothy Schrade, approaching the accident scene from the north on Bernard Road, distinguished a light from the Wright vehicle for a considerable distance. Reviewing this evidence pursuant to Strong, supra, we must sustain the District Court.

Lee contests the propriety of accepting into evidence by judicial notice the filing fee and certain witness fees because there was no evidence connecting the fees directly to Lee's actions. Lee argues this evidence alone supports the finding of actual damages to Lauman and therefore the subsequent award of exemplary damages.

As we have already discussed, Lee's activities resulted in ample, albeit somewhat abstract, bases for actual damages to Lauman. In light of the independent grounds for damages, the admission of the various fees was harmless error, if error at all. A reversal cannot be predicated upon an error in admission of evidence, where the evidence in question was not of such character to have affected the result in the case. Donohoe v. Landoe (1952), 126 Mont. 351, 362, 251 P.2d 560, 565-66.

The jury was instructed that pursuant to section 61-9-216, MCA, every vehicle must have a headlamp visible from not less than 500 feet. The jury was also instructed that pursuant to section 61-9-220, MCA, motor vehicles must have low beam headlamps which illuminate persons or vehicles for a distance of at least 100 feet. Lee argues that only the latter is a correct statement of the law as applied to automobiles; and that the jury instruction reciting the 500 foot visibility standard improperly prejudiced Lee's case.

Section 61-9-216, MCA, by its express terms applies only to "every vehicle . . . not specifically required by the provisions of this chapter to be equipped with lamps or other lighting devices." Motor vehicles are specifically required under section 61-9-220, MCA, to be equipped with headlamps. Under the plain meaning of the provisions of section 61-9-216, MCA, that section does not apply to motor vehicles. See, Jones v. Judge (1978), 176 Mont. 251, 577 P.2d 846. Nevertheless, the giving of the instruction was not reversible error.

A visibility standard of only 500 feet would indeed be a lax requirement. Officer Kraut testified that a lighted match may be visible at night from as far as 600 yards; moreover, normal car headlights can be seen for a number of miles. Two vehicles converging at 55 miles per hour eclipse a 500 foot gap in about three seconds.

The instruction, although an erroneous statement of the statutory applicable law, constituted only harmless error. The error if anything, generally benefited the defense in this case. Brown v. North Am. Mfg. Co. (1978), 176 Mont. 98, 115, 576 P.2d 711, 721. Furthermore the visibility and illumination standards for headlights were relevant only to the negligence issue, rather than Lee's conduct; and thus could not have affected the outcome of the verdict against Lee. Ratcliff v. Murphy (1967), 150 Mont. 31, 430 P.2d 627; Rule 61, M.R.Civ.P.

Lee next asserts that the award of exemplary damages was the result of the inflamed passion and prejudice of the jury. He argues the award is excessive in light of the conduct--in Lee's argument, the initial, innocuous wipe-- which caused Lauman any damage, and explicable only as

-8-

influenced by passion and prejudice. Lee also argues that passion and prejudice are reflected by the inordinate mathematical percentage of his assets represented by the award.

We have recently discussed the jury's prerogative in setting exemplary damages in Butcher v. Petranek (1979), ___ Mont. ___, 593 P.2d 743, 36 St.Rep. 830. The jury may consider such attendant circumstances as the malice or wantonness of the act, the injury intended, the motive for the act, the manner of commission and the deterrent effect on others, as well as the defendant's wealth. Butcher, 593 P.2d at 745, 36 St.Rep. at 834. The jury had discretion reasonably to calculate a suitable punishment for Lee's actions after listening to the testimony and weighing the evidence. We will not disturb that calculation on appeal.

Finally, as in Butcher, Lee's assertion of passion and prejudice is unsupported by any reference to the record, to improvident remarks by counsel or witnesses for Lauman, or to any other prejudicial source. Lee lauds the jury for its reasonable verdict in favor of the Wrights in his earlier argument on the absence of any actual damages. Absent any showing of possible sources of passion or prejudice, it would be inconsistent to assume that a jury, acting reasonably in finding no negligence, suddenly was overcome by passion and prejudice in assessing exemplary damages. Butcher, 593 P.2d at 747, 36 St.Rep. at 835.

The final issue before us concerns peremptory juror challenges. The district judge, without setting forth a specific basis for his decision, allowed a total of eight peremptory challenges to the defendants--four to the Wrights and four to Lee. Lauman argues that the failure of the

District Court to follow the procedural guidelines laid down in Hunsaker v. Bozeman Deaconess Foundation (1978), ___ Mont. ___, 588 P.2d 493, 35 St.Rep. 1647, gave rise to a presumption of prejudice.

The rule prior to Hunsaker for determining whether the granting of additional peremptory challenges constituted reversible error was explained in Leary v. Kelly Pipe Company (1976), 169 Mont. 511, 549 P.2d 813. A party claiming error was required to show: (1) that the opposing parties were not entitled to additional peremptory challenges; (2) that the complaining party exhausted his peremptory challenges; (3) the complaining party has suffered material injury from the action of the court; and (4) that as a result thereof one or more objectionable jurors sat on the case. 169 Mont. at 516, 549 P.2d at 816.

In Hunsaker, we recognized that under the Leary approach, the appellant is typically subjected to the nearly insurmountable burden of proving actual prejudice. The reviewing court is, in such an instance, forced to evaluate the actual conduct of the jury, of which there is no record. The Leary procedure virtually ignores the correctness of the trial court's ruling, although a trial court making an adequate record in issuing its order would provide the most exacting basis for review. In order to alleviate this anomalous result, we expressed in Hunsaker that in reviewing these issues we shall focus our attention on the correctness of the District Court's ruling at the time it was made. 588 P.2d at 500, 35 St.Rep. at 1652. To facilitate our review and ensure existence of a proper record to that purpose, we made the following suggestion:

-10-

"The District Courts should seriously consider the use of the pretrial conference as the best procedure to be used in resolving questions such as the number of peremptory challenges to be allowed each side. If for some rare reason the District Court holds no pretrial conference, the question of peremptory challenges should be raised by appropriate written motion filed before the commencement of jury selection, and it should set forth all facts and references tending to support his claim of hostility. In any case, the opposing party or parties should be given adequate time to respond to the claims of hostility.

"The trial court should, as a bare minimum, rule on the peremptory challenge issue before the questioning of jurors begins. To afford a basis for review, it should expressly set forth in the record the reasons for its ruling and the facts on which it relies in making its decision." 588 P.2d at 501, 35 St.Rep. at 1654.

We iterate here our desire that District Courts follow this procedure. We shall resort to examination of the conduct of the jury, as in Leary, only where there is an insufficient record by which to review the trial court's order.

Although the Hunsaker guidelines were not followed in the instant case, we do have sufficient facts before us to review the propriety of its order granting Lee four peremptory challenges. At the time additional challenges were ordered, Lauman was proceeding against Lee on separate theories of negligent entrustment and damages arising from the destruction of evidence. Regarding the former, Lee's position was hostile to the Wrights'--their intervening negligence severed his negligence liability. The latter theory stems from an entirely separate transaction not involving the Wrights.

Section 25-7-224, MCA, allows each party four peremptory challenges. "Each party" means "each side" unless the positions of the codefendants are hostile to each other. Mullery v. Great Northern Ry. Co. (1915), 50 Mont. 408, 148 P. 323. Here Lee and Wrights were codefendants only concerning the automobile collision. They occupied hostile positions

-11-

on that matter at the time of the ruling. The District Court order granting separate peremptory challenges was therefore correct.

Affirmed as to both appeals. Each party shall bear his own costs of appeal.

_John C. Sheehy_
Justice

We Concur:

_Frank J. Haswell_
Chief Justice

_Gene B. Daly_

_John Conway Harrison_

_Daniel J. Shea_
Justices