No. 83-172

IN THE SUPREME COURT OF THE STATE OF MONTANA

1983

---

WILLIAM OWENS,

      Plaintiff and Appellant,

  -vs-

PARKER DRILLING CO.,

      Defendant and Respondent.

---

APPEAL FROM: District Court of the Seventh Judicial District,
In and for the County Richland,
The Honorable R. C. McDonough, Judge presiding.
*J. C. Gulbrandson*

COUNSEL OF RECORD:

    For Appellant:

        Lucas & Monaghan; Thomas M. Monaghan argued,
Miles City, Montana

    For Respondent:

        Habedank, Cumming & Best; Jacque W. Best argued,
Sidney, Montana

---

Submitted: November 3, 1983

Decided: January 12, 1984

Filed: JAN 12 1984

*Ethel M. Harrison*
--------------------------------
Clerk

Mr. Justice Frank B. Morrison, Jr. delivered the Opinion of the Court.

Plaintiff William Owens (Owens) appeals the order of the District Court, Richland County, granting partial summary judgment on the issue of punitive damages in an action alleging discriminatory firing of Owens by defendant Parker Drilling Company (Parker).

Owens is missing his right arm from three inches below the elbow. He lost that part of his arm when he was six years old. Owens has worked as a "roughneck" and drill "hand" since 1958 or 1959.

Owens worked for Parker from April 4, 1978 through April 8, 1978. He was discharged from Parker by Roger Hystad at the direction of his supervisors for the given reason that he only had one arm. No investigation was made to determine the ability of Owens to safely and satisfactorily complete all duties of his employment. The decision to fire was apparently made on the basis that a one-armed worker is unsafe per se on a drilling operation.

Parker has a safety manual setting forth minimum physical requirements for employees prohibiting employment of persons with "severe disabilities or impairments to arms, hands, fingers, legs, feet and toes."

Owens was out of work for approximately three days, and then was hired on by another drilling company. There is considerable evidence that Owens has at all times been an able and safe worker on the drilling rigs both before and after his employment with Parker.

Owens brought this action seeking compensatory damages for unlawful discharge in violation of sections 49-4-101 and 102, MCA. He also seeks punitive damages for "wrongful,

willful, intentional, malicious, and reckless act of Defendant in firing Plaintiff."

Parker moved for partial summary judgment on the issue of punitive damages. The District Court granted the motion, ruling that plaintiff had failed to establish a genuine factual issue as to whether the violation of statute was criminal or wanton, or whether the acts of defendant were done with sufficiently culpable mental state to justify award of punitive damages under section 27-1-221, MCA.

The following issues are raised on appeal:

1. Is plaintiff entitled to a trial on the question of punitive damages where he has established a genuine factual issue of whether his discharge constituted unlawful discrimination as defined in sections 49-4-101, 102, MCA?

2. Has plaintiff produced sufficient evidence to establish a genuine factual issue of whether defendant acted with "oppression, fraud or malice, actual or presumed," entitling him to a recovery of punitive damages?

Owens argues that breach of the statutory duty imposed by sections 49-4-101, 102, MCA is so culpable, that such a breach necessarily raises a genuine issue of punitive damages. We disagree.

The mere fact that the conduct on which the lawsuit is based is unlawful should not in and of itself authorize a recovery of punitive damages. Fahrenberg v. Tengel (Wis. 1980), 291 N.W.2d 516; Graham v. Turner (Tex. 1971), 472 S.W.2d 831, 839; Graham v. Clarks Fork National Bank (Mont. 1981), 631 P.2d 718, 721, 38 St.Rep. 1140, 1143-44. Luther v. Lee (1922), 62 Mont. 174, 179, 204 P. 365, 367. For example, exceeding the 55 m.p.h. speed limit is unlawful and may even be intended, but does not rise to the level of

3

culpability warranting punitive damages unless there is a high degree of probability that serious harm will result.

Section 27-1-221, MCA provides for punitive awards in cases of "actual" malice and "presumed" malice. Thus, where a statute specifically proscribes conduct which is actually malicious such as theft or assault, punitive damages may be sought for violation of such a statute. Violation of other statutes warrants an issue of punitive damages only where malice may be presumed from the particular facts.

Consideration of recent decisions of this Court will demonstrate when malice may be presumed from violation of statute.

In First Security Bank v. Goddard (1979), 181 Mont. 407, 422, 593 P.2d 1040, 1048-1049, we held that malice could be implied, where the defendant insurance company breached its duty to settle as soon as possible with its insured in violation of the insurance code, because the defendant engaged in a course of conduct "knowing it to be harmful and unlawful," and its actions were "unjustifiable." Acc. Ramsbacher v. Hohman (1927), 80 Mont. 480, 487-488, 261 P. 273, 276. Again in Dvorak v. Huntley Project Irrig. Dist. (1981), 196 Mont. 167, 639 P.2d 62, an intentional failure to provide water to the rightful claimant in violation of statute was held to support an award of punitive damages because the conduct of the defendant was "unjustifiable".

Another discussion of the concept of malice-in-law is found in Butcher v. Petranek (1979), 181 Mont. 358, 593 P.2d 743. In that case we approved a "recklessness" standard for presumed malice.

> "The jury may also take into account whether the acts complained of are 'of such a character as to indicate a reckless disregard of the rights of the plaintiff' in awarding a 'reasonable amount' of

4

punitive damages. Mosback v. Smith Brothers Sheep Co. (1922), 65 Mont. 42, 46-47, 210 P. 910, 912.

"Elaborating further on the concept of malice, we stated in 1927 that:

" . . .'The term "malice," as applied to torts, does not necessarily mean that which must proceed from a spiteful, malignant or revengeful disposition but a conduct injurious to another, though proceeding from an ill-regulated mind, not sufficiently cautious before it occasions an injury to another.. . .'" Ramsbacher v. Hohman (1927), 80 Mont. 480, 487-88, 261 P. 273, 276. Id. at 362.

This recklessness standard is the same punitive damages standard used by this Court in evaluating conduct of defendants which was not specifically proscribed by statute. See e.g. Graham v. Clarks Fork National Bank (Mont. 1981), 631 P.2d 718, 721, 38 St.Rep. 1140, 1144, "recklessness"; Shahrokhfar v. State Farm (Mont. 1981), 634 P.2d 653, 657, 38 St.Rep. 1669, 1673, "recklessly"; Derenberger v. Lutey, (Mont. 1983), _____ P.2d ____, 40 St.Rep. 902, 907, "willful or wanton misconduct"; Ferguson v. Town Pump, Inc. (1978), 177 Mont. 122, 132, 580 P.2d 915, 921, "willful disregard of duty"; and Cashin v. Northern Pac. Ry. Co. (1934), 96 Mont. 92, 112, 28 P.2d 862, 870, "willful or wanton disregard of the rights of others."

The use of words like "unjustifiable" and "reckless" represent attempts of this Court to describe that level of conduct, whether specifically proscribed by statute or not, which is so culpable as to warrant an award of punitive damages.

Much confusion has been generated by inconsistent use of loosely defined terms such as willfulness, wantonness, recklessness, gross negligence, and unjustifiable conduct. To avoid future confusion it is necessary to adopt a

5

carefully defined standard of conduct and prescribe its legal significance. We adopt this standard for presumed malice:

When a person knows or has reason to know of facts which create a high degree of risk of harm to the substantial interests of another, and either deliberately proceeds to act in conscious disregard of or indifference to that risk, or recklessly proceeds in unreasonable disregard of or indifference to that risk, his conduct meets the standard of willful, wanton, and/or reckless to which the law of this State will allow imposition of punitive damages on the basis of presumed malice.

This standard is more definitive and perhaps more stringent than those of the past. Certainly the "unjustified conduct" measure was extremely broad and difficult to apply. We also emphasize that substantial interests must be implicated so that an intentional or reckless disregard of duties that do not protect substantial interests, does not give rise to punitive damages. The standard, in substance, is supported by Restatement of the Law, Torts 2d. §500, comment a.

The standard is equally applicable to statutory violations and other wrongful conduct. Thus, where a statute is designed to protect the substantial interests of a person from a high degree of risk, and the statute is violated either intentionally or recklessly, a jury question of punitive damages is raised. Punitive damages may also be awarded under sections 27-1-221, MCA for fraud or oppression. This holding only defines a standard for "presumed malice."

The present case involves a determination of whether the statute, section 49-4-101, MCA was designed to protect the substantial rights of employees such as Owens from a high

risk of harm, and whether Parker's alleged violation of the statute was reckless.

The Discrimination in Employment Statutes, sections 49-4-101, 102, MCA, are enacted to protect the handicapped person's substantial right to be fairly treated in the employment relationship.

Section 49-4-101, MCA, provides as follows:

"Discrimination prohibited. It is unlawful to discriminate, in hiring or employment, against a person because of the physical handicap of such person. There is no discrimination where the nature or extent of the handicap reasonably precludes the performance of the particular employment or where the particular employment may subject the handicapped or his fellow employees to physical harm."

Section 49-4-102, MCA, provides as follows:

"Penalty and civil remedy. A person who practices discrimnation in violation of 49-4-101 commits a misdemeanor and is also liable in a district court action for civil damages and attorney's fees by the person discriminated against. Should the person who allegedly practiced discrimination prevail in the civil action, he shall be entitled to recover reasonable attorney's fees from the person who alleged the discrimnation."

These statutes were specifically designed to protect handicapped persons from the denial of a substantial right to fair treatment in the employment relationship; such denial would result in economic harm to such persons and their families, as well as damage to their sense of self esteem. Violation of this statute warrants a claim for punitive damages if such violation is shown to be intentional or reckless. Therefore, the final issue is whether sufficient evidence has been produced by way of depositions and interrogatories to establish a genuine issue of reckless conduct creating a presumption of malice which would support a claim for punitive damages.

7

The following facts have been established prima facie by Owens:

1. Owens has been missing the forearm on his right side since he was 6 years old.

2. Owens has been able to fully and safely perform all of his duties while working on drilling rigs.

3. Owens was fired by Roger Hystad on the sole basis that since he only had one arm it would not be safe to keep him on and that it was company policy to therefore fire him.

4. No investigation was made into the ability of Owens to safely and fully complete the duties of his employment.

5. No specific facts supported the conclusion that Owens would be unsafe.

6. A written company policy prohibited hiring of workers in Owens' condition; although it was also company policy to give handicapped persons "every consideration."

The above facts, if proven, would support a finding that the defendant recklessly proceeded in unreasonable disregard of, and in great risk to, the substantial interests of plaintiff. Failure to give a person a chance in employment is the essence of the wrong proscribed by section 49-4-101, MCA. Failure to even investigate plaintiff's worth could be found by the jury to be recklessness.

We add that there may be a punitive damage issue on oppression. In Gary & Purcell v. Automatic Gas et al., No. 82-54 (Mont. Dec. 1983), we defined oppression to include acts which constitute an abuse of power. A determination of whether acts of oppression may be involved should await presentation of the evidence.

There are those who distrust the lay person's capacity for reasoned and dispassionate judgment. There are those who

tolerate the juries but feel compelled to hold tight rein lest the wretched twelve break the bank. This judicial chauvinism will, if not checked, inevitably erode the jury process.

We feel that the parties' peers are best able to define and measure justice. In any factual setting, where reasonable minds can disagree, we will vigilantly protect the peoples' jural function.

The District Court is reversed and the matter is remanded for trial.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

_____
Hon. Robert M. Holter,
District Judge, sitting in place of
Mr. Justice L. C. Gulbrandson

Mr. Justice Fred J. Weber dissents as follows:

I do commend the author of the majority opinion for his attempt to prescribe a standard for presumed malice in punitive damage cases. I agree that our cases have not set forth clear guidelines for future litigation.

I dissent because of my belief that the application of the standard in the present case has reached an unjust result. Perhaps that is a result of applying a physical safety standard to a discrimination case. See Restatement of the Law Second, Torts §500, entitled "Reckless Disregard of Safety."

The record in this case shows that the safety director of Parker Drilling Co. formulated guidelines for hiring and firing personnel and that these guidelines were posted in the "doghouse" on the drilling rig. The physical requirement guidelines for the job of "roughneck" are as follows:

> "In order to reduce the possibility of injuries on-the-job to an employee or injury to fellow employees caused by an employee's physical impairment, Parker Drilling Company has set out the following minimum physical standards for all new employees working in the field operations on the drilling rigs.
>
> Minimum Height - 5'6"
>
> Minimum Weight - 130 lbs.
>
> Minimum Vision with or without corrective glasses - 20/30 in each eye.
>
> Minimum Hearing - 15/20 in each ear.
>
> Blood Pressure - within normal limit for age of the individual.
>
> No History of Heart Condition.
>
> No History of Acute Diabetic Condition.
>
> No Congenital Deformity of the Back or Previous Back Surgery.
>
> No Hernia or Previous Hernia Surgery.
>
> No Severe Disabilities or Impairments to Arms, Hands, Fingers, Legs, Feet and Toes.

Plaintiff's application for employment with the defendant company contained the following questions:

"Do you have any cronic illnesses or known medical limitations? Yes _____ No _____ If yes, explain:"

Plaintiff did not mark the "No" or otherwise mention in his application that his right hand and a portion of his arm were missing.

The reasons for the discharge of the plaintiff are described in the deposition of the operation's manager of Parker Drilling. In pertinent part he stated:

"Q. What else were you told by either one of these gentlemen?

"A. I was told that he had only one arm, and that they felt that he was a safety hazard as far as to himself, the other crew members. And they wanted my advice as to whether or not they should fire him because of the possibility that he - suing us. My answer to that was, yes, our policy was that we had to let him go because of our requirements, and that if they felt like he was a safety hazard, by all means let him go.

" . . .

"Q. What are the other reasons, then, why he was fired?

"A. During the conversation on the telephone with either Mr. Carter or Heistad [tool pushers on the rig], they, in addition to him having only one arm and then feeling that he was a safety hazard, as far as to himself and the other crew members, that he was not a good worker and was not performing his duties properly.

"Q. And what specifically was he not doing with regard to doing his duties or doing his job?

"A. They told me that they - he was not checking the engine oil and the water in the radiators, and that he was asked to do. And that the crew that was following him had found that the engines were several gallons low on oil after he was relieved, and that the - therefore he wasn't checking his engines properly."

The depositions of the operation's manager and one of the tool pushers (manager on a drilling rig) established that, in a combined 30 years of experience working in the oil fields, neither had ever seen anyone with an arm missing working as a roughneck or a driller on an oil rig.

It is also significant to note that plaintiff concludes he is entitled to punitive damages simply because of the fact of his being discharged. He does not contend that there was any wrongful, willful or intentional contract specifically directed at him. A key element of the majority opinion is the conclusion that failure to investigate into the capacity of the plaintiff could be found to be recklessness. That conclusion is subject to factual question.

In determining whether or not there has been discrimination, all of section 49-4-101, MCA must be considered, including the following pertinent part:

> "Discrimination prohibited. It is unlawful to discriminate, . . . There is no discrimination where the nature or extent of the handicap reasonably precludes the performance of their particular employment or where the particular employment may subject the handicapped or his fellow employees to physical harm."

Under the specific provisions of the statute, there is no discrimination in this case if the nature of the plaintiff's handicap, that being a missing hand and part of his arm, reasonably precluded the performance of his job as a roughneck in the oil field. In addition, there is no discrimination if that same handicap might subject the handicapped person or his fellow employees to physical harm. The wording of the statute allows the type of physical requirements which were adopted by the defendant employer for the hazardous work upon an oil rig. While the facts do demonstrate that the plaintiff has worked successfully on an oil rig notwithstanding his handicap, he is quite unique. The record does not indicate others have successfully met that test. Common sense tends to accept the testimony of the two persons, who in more than 30 years experience had never seen another one-armed man working on drilling rigs.

In this instance, the handicap of the plaintiff is such as to present a real possibility of physical harm to either

12

the plaintiff or his fellow employees. This exception is explicity contemplated by the statute as a basis for concluding there has been no discrimination.

As I reviewed the cases cited in the majority opinion, I concluded that a common denominator of the Montana cases was some type of intentional conduct or harm on the part of the person charged with conduct justifying punitive damages. This is clearly set forth in Shahrokhfar v. State Farm (Mont. 1981), 634 P.2d 653, 657, 38 St.Rep. 1669, 1673, where the Court stated:

> "Next, appellant alleges error in submission of punitive damages claiming insufficient evidence of reprehensible conduct on the part of State Farm. This contention is disposed of in Graham v. Clarks Fork Nat. Bank (1981), Mont., 631 P.2d 718, 38 St.Rep. 1140. In the Graham case we found sufficient evidence to justify the submission of punitive damages from the following facts: (1) The defendant had seized plaintiff's cows, mistakenly thinking they belonged to a bank debtor; and (2) when the plaintiff attempted to recover his cows, the bank adamantly refused to divulge their location and thereafter returned them to the wrong location. We held that such facts raised an issue for the jury's consideration of punitive damages under the 'recklessness' standard enunciated in Klind v. Valley County Bank (1924), 69 Mont. 386, 222 P.2d 439. In this case State Farm sued the wrong person and though advised of its mistake, refused to make a correction. As in Graham, these facts are sufficient for the jury to determine that State Farm acted recklessly and that it be subject to the sanction of punitive damages."

In the Graham case, the bank had seized cows and refused to divulge the location or to return them. The cows were branded with the brand of the person claiming ownership, not the bank's alleged debtor. That is clearly a form of intentional conduct aimed at the plaintiff. In a similar manner in Shahrokhfar, the insurance company sued the wrong person and though advised of its mistake, refused to make a correction. Again there is intentional conduct specifically aimed at the plaintiff. This does not mean that punitive damages are limited to situations where a tortfeasor intentionally acts to harm a particular plaintiff. However,

13

I would affirm the universally recognized rule that to warrant recovery of punitive damages, the act complained of must not only be unlawful, but must also be characterized by some circumstance of aggravation. See Allers v. Willis (Mont. 1982), 643 P.2d 592, 596, 39 St.Rep. 745, 750. In the present case, plaintiff in substance contends that the adoption of a written policy prohibiting hiring of workers who fail to meet minimum physical requirements, without specifically testing each applicant's individual capacity to perform constitutes recklessness. I do not find the cited cases good authority for that conclusion.

While it may be contended that the employment regulations of the defendant are subject to some question, the record does not disclose a reckless action and unreasonable disregard or indifference to a risk of harm to the plaintiff.

Under the majority's rationale, each person not meeting the minimum physical qualifications for the job must be tested individually to determine whether he has unique capabilities. An employer could be liable for punitive damages for not investigating past review of the job application, even if refusal to hire reasonably protected the handicapped and his fellow employees from physical harm. Respondent's employment standard appears to be specifically sanctioned under section 49-4-401, MCA. I would therefore affirm the District Court in its holding that the Court was precluded from submitting the question of punitive damages.

_____
Justice

I join in the above dissent:

_____
District Court Judge

14